# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================================================
## ON UNOPPOSED MOTION TO MODIFY THE JUDGMENT
========================================================

## NO. 03-03-00698-CV

**Harold Granek, M.D., Appellant**

**v.**

**Texas State Board of Medical Examiners and Donald W. Patrick, M.D., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GN201905, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

On August 3, 2005, we overruled appellant Harold Granek, M.D.'s motion for rehearing. To address additional issues raised in his unopposed motion to modify the judgment, we withdraw our opinion and judgment dated August 3, 2005, and substitute the following in its place.

Granek appeals the district court's judgment affirming an order of the Texas State Board of Medical Examiners (Board) imposing disciplinary sanctions against him.[1] He complains chiefly that the Board violated due process in prosecuting its disciplinary complaint against him

---

[1] Appellee Donald W. Patrick, M.D. is the Executive Director of the Board.

when some of its allegations were more than a decade old; that there is not substantial evidence to support the Board's disciplinary grounds; and that the Board committed errors of law by including certain commentary in its order. We will affirm in part and reverse and remand in part.

**BACKGROUND**

Granek holds a license to practice medicine issued by the Board. He is an ophthalmologist who specializes in the treatment of the vitreo-retinal part of the eye and has practiced in Fort Worth since approximately 1991.

**Disciplinary proceedings**

In June 2000, the Board docketed a formal disciplinary complaint against Granek, which it subsequently amended in December 2000 and again in January 2001. The complaint was referred to the State Office of Administrative Hearings, and a hearing was held before an Administrative Law Judge (ALJ) in January 2001. The ALJ heard evidence and issued a proposal for decision (PFD) concluding that the Board had established three grounds for discipline.

First, the ALJ found that, on January 8, 1994, Granek had failed to attend a patient, L.H., after she had presented herself at the emergency room of the HCA Medical Plaza hospital in Fort Worth (HCA) with severe pain caused by building pressure within her eye. The ALJ found that Granek, who was not at the hospital at the time nor "on call," had refused to return to the hospital to perform paracentesis or "tapping" of L.H.'s eye with a needle to relieve pressure. Instead, Granek had maintained that tapping was at best a short-term measure aimed merely at symptoms and had

previously advised L.H. to see a glaucoma specialist to treat her underlying problem. The ALJ

concluded that by this conduct, Granek had "failed to practice medicine in an acceptable professional

manner consistent with public health and welfare," Tex. Occ. Code Ann. § 164.051(a)(6), and

"commit[ted] unprofessional or dishonorable conduct that is likely to . . . injure the public." *Id*.

§§ 164.051(a)(1), 164.052(a)(5) (West 2004). Both violations are grounds for physician discipline.

*Id*.

As additional support for these ultimate conclusions of law, the ALJ relied on two

sets of legal conclusions regarding Granek's duties to L.H. in these circumstances. First, the ALJ

concluded that Granek breached the tort duty not to abandon L.H. *See King v. Fisher*, 918 S.W.2d

108, 112 (Tex. App.—Fort Worth 1996, writ denied); *Lee v. Dewbre*, 362 S.W.2d 900, 902 (Tex.

Civ. App.—Amarillo 1962, no writ).[2] Second, the ALJ derived a set of physician-patient duties from

*Lunsford v. Board of Nurse Examiners*, 648 S.W.2d 391 (Tex. Civ. App.—Austin 1983, no writ).[3]

---

[2] Patient abandonment is a form of breach of duty in a medical malpractice action. Elements
of an abandonment claim are (1) the unilateral severance of the doctor-patient relationship by the
doctor; (2) without reasonable notice or without providing adequate alternative medical care; (3) at
a time when there is a necessity of continuing medical attention. *King v. Fisher*, 918 S.W.2d 108,
112 (Tex. App.—Fort Worth 1996, writ denied).

[3] In *Lunsford*, this Court affirmed an order of the Board of Nursing Examiners imposing
discipline for "unprofessional or dishonorable conduct" in refusing to treat a patient who had
presented himself at an emergency room with chest pains. The patient subsequently died while en
route to another hospital. In response to the nurse's claim that she owed no duty to care for the
patient, we found such a duty based in part on the following assertions:

> When appellant received the privilege of being licensed as a nurse in this State,
> she entered into a covenant to serve the people of this State with all her
> professional skills and powers. This suit is not brought in contract or in tort by
> one individual who feels he or she has been wronged by appellant's actions or

Citing *Lunsford,* the ALJ concluded that "[a] license to provide medical services is a covenant to serve the people of the State of Texas with professional skill and power and a contract to always act in a professional and honorable manner," and that Granek broke his "covenant to serve the people of the State of Texas with all his professional skills and powers" and his "contract with the people of the State of Texas to act in a professional and honorable manner." *See id*. at 395.

The second ground for discipline found by the ALJ was based on occupations code section 164.051(a)(7). *See* Tex. Occ. Code Ann. § 164.051(a)(7) (West 2004). That provision applies when a licensee "is disciplined by a licensed hospital or medical staff of a hospital, including removal, suspension, limitation of hospital privileges, or other disciplinary action, if the board finds that the action: (A) was based on unprofessional conduct or professional incompetence that was likely to harm the public; and (B) was appropriate and reasonably supported by evidence submitted to the board." *Id*. The ALJ based this conclusion on findings that Granek failed to comply with the requests of both the emergency room doctor and the HCA chief of staff to attend L.H. on January 8, 1994; that the chief of staff had summarily suspended Granek's hospital privileges for his refusal; that an *ad hoc* peer review committee at HCA had rescinded the summary suspension but

---

inaction, but this suit is brought by the people of this State for appellant's violation of her contractual duties to them to always act in a professional and honorable manner.

*Lunsford v. Board of Nurse Exam'rs*, 648 S.W.2d 391, 395 (Tex. Civ. App.—Austin 1983, no writ).

4

recommended placing Granek on a twelve-month probated suspension with monitoring; and that this recommendation had been affirmed in a final decision of the HCA Board of Trustees.

The third ground for discipline found by the ALJ related to allegations that Granek had improperly touched the breasts of female patients during the 1980s. The ALJ found that Granek had touched the breasts of two patients, J.G. and K.G., although she found that Granek had acted intentionally only with regard to J.G.[4] Based on her fact-findings that Granek had intentionally touched J.G.'s breasts and touched K.G.'s breasts, the ALJ concluded that Granek had "failed to practice medicine in an acceptable professional manner consistent with public health and welfare," Tex. Occ. Code Ann. § 164.051(a)(6), and "commit[ted] unprofessional or dishonorable conduct that is likely to . . . injure the public." *Id*. §§ 164.051(a)(1), .052(a)(5). The ALJ also based these ultimate conclusions on her conclusions of law, derived from *Lunsford*, that Granek's medical license was a "covenant to serve the people of the State of Texas with all his professional skills and powers" and a "contract with the people of the State of Texas to act in a professional and honorable manner." *See Lunsford*, 648 S.W.2d at 395.

Having concluded that the Board had established three bases for imposing physician discipline, *see* Tex. Occ. Code Ann. § 164.001(b), the ALJ proceeded to make findings of fact and conclusions of law regarding a recommended penalty:

20. . . . Respondent is qualified for a probated sanction.

---

[4] The ALJ found that the Board had failed to prove similar allegations regarding two other patients. In addition, the Board raised three other allegations that were either dismissed voluntarily or found to be unproven. None of these allegations are at issue in this appeal.

5

21. Based on the foregoing, the Board may suspend Respondent's license[] to practice medicine for three years but probate that suspension for a three-year period conditioned on his successfully completing educational courses designed to enhance his knowledge of professional ethics and to improve his ability to communicate with patients.

22. Based on Findings of Fact Nos. 70-71, there is insufficient evidence to determine an appropriate administrative penalty against Respondent.

In her PFD, the ALJ expressed concern regarding the staleness of the Board's improper contact allegations, which were based on events that had occurred as many as fifteen years before the hearing. She also included a finding that "Staff's allegations in this case were stale, the latest complaint dating from approximately 1994," and further elaborated in her PFD that she viewed staleness as a mitigating factor.

> The staleness of [the Board] Staff's complaints must be considered a mitigating factor. It is simply unfair to all persons involved in the disciplinary process for complaints to languish for years as they did in this case. Over time memories fade or become distorted, records and witnesses are lost, rules and statutes alter, all adversely affecting the disciplinary process. If a complaint is important enough to prosecute, it should be done in a timely fashion.

> Some of the incidents that became complaints in this matter occurred in the late 1980s. The most recent complaint was from 1994. Staff did not file its complaint against Respondent until 2000. Staff's dilatoriness in prosecuting the complaints ultimately makes the Board's decision that much harder. When the public welfare and a person's professional livelihood and reputation are at stake, justice delayed is justice diminished. The staleness of the complaints in this matter was an injustice both to complainants and Respondent.

**The Board's original order of April 24, 2002**

In an order dated April 24, 2002, the Board adopted each of the ALJ's proposed findings of fact except for three that are not material to this appeal. It also adopted all of the ALJ's

6

conclusions of law material to this appeal except that it rejected conclusions of law 20 (that Granek

"is qualified for a probated sanction") and 21 (that the Board could suspend Granek's license for

three years conditioned on his completion of required education). In lieu of conclusions 20 and 21,

the Board ordered that Granek's medical license be immediately revoked. It provided the following

four-paragraph explanation (italics in original):

> *The Board omitted the ALJ's proposed conclusions of law Nos. 20 and 21 in this Final Order, and renumbered the ALJ's proposed conclusion 22 as 19 in this Final Order.*
>
> *The ALJ's proposed conclusion of law No. 20 stated: "Based on Findings of Fact Nos. 57-58, Respondent is qualified for a probated sanction."*
>
> *The ALJ's proposed conclusion of law No. 21 stated: "Based on the foregoing, the Board may suspend Respondent's license[] to practice medicine for three (3) years but probate that suspension for a three-year period conditioned on his successfully completing educational courses designed to enhance his knowledge of professional ethics and to improve his ability to communicate with patients."*
>
> *The ALJ's proposed conclusions of law Nos. 20 and 21 are not really conclusions of law at all, but recommended sanctions. While it may be appropriate for the ALJ to recommend a sanction, it is ultimately up to the Board to determine what the appropriate sanction should be. The ALJ believes the relative minor sanction of a three year suspension of Respondent's license is sufficient, the Board disagreed, and concluded that the revocation of Respondent's license is the only sanction that will adequately protect the public. Respondent's conduct of fondling and molesting patients while performing ophthalmologic examinations on them is not a problem that will be corrected by additional continuing medical education as suggested by the ALJ. Respondent has engaged in this conduct over a period of many years. There was no evidence that Respondent has sought any treatment for his inability to control his prurient desires, nor in fact was any evidence admitted that the Respondent's defects in character can be treated. The Board feels that the sanction of revocation of Respondent's license is the only sanction that will adequately protect the public. The Board will not condone the Respondent's assaulting, fondling or molesting one other patient by under [sic] the guise of practicing medicine by allowing him to retain his medical license.*

**Granek's appeal and subsequent Board orders**

On May 13, 2002, Granek filed a motion for rehearing of the Board's April 24 order. On June 10, a few days after his motion for rehearing expired by operation of law, Granek filed a petition for judicial review of the Board's order in the Travis County district court. He also sought injunctive relief to prevent the Board from enforcing its order during the pendency of his administrative appeal. On June 11, the district court granted a temporary restraining order enjoining the Board from enforcing its order "[p]rovided, however, that Plaintiff must not treat female patients without an assistant present." At the TRO hearing, the court evidently expressed concern that the Board's allegations against Granek were stale and that revocation was a disproportionate penalty.

The temporary injunction hearing regarding the April 24 order was subsequently held on June 27, 2002. At the hearing, counsel for the Board recounted the events at the TRO hearing and represented that Board staff "took [the district court's] words to heart" and had requested that the Board reconsider the revocation sanction it had assessed against Granek. However, Board counsel explained that, in his view, the Board was without jurisdiction to modify its order while Granek's suit for judicial review was pending. Board counsel thus requested that the court formally "remand this case back . . . for the limited purpose of them reassessing the penalty, not to remand the whole thing back." While not appearing to oppose this measure, Granek's counsel insisted that injunctive relief was necessary in the interim to prevent the Board from enforcing its still-live order.

The trial court issued a written order dated August 12, 2002, enjoining the Board from enforcing its April 24 order, staying that order, and setting trial on the merits.[5] The court further

---

[5] The court explained that it enjoined the April 24 order because "Section 164.001 [of the occupations code] tells me that the order is live and operative unless it is stayed."

8

remanded the April 24 order for "further proceedings . . . limited to a reconsideration and possible further action relating to the penalty imposed against . . . Granek" and ordered that, "If reconsideration and further action is taken," the Board was to "file any such changes or decisions with the Court."

On remand, the Board reconsidered its April 24 order during a meeting on August 16, 2002. On the same day, it issued a new "Final Order" that was substantively identical to the Board's April 24 order except that it changed the sanction from immediate license revocation to a three-year probated license suspension, subject to sixteen terms and conditions. The Board's first condition was "Respondent shall not examine or treat patients." Another condition required Granek to provide a copy of the order to all health care facilities where he had or sought privileges. The Board additionally assessed an administrative penalty of $25,000, notwithstanding its undisturbed conclusion of law 19 that "there is insufficient evidence to determine an appropriate administrative penalty against Respondent." Finally, although the Board replaced its original revocation sanction with a three-year probated suspension, it retained in full its explanation for the revocation sanction from the April 24 order.

On September 23, 2002, the Board issued an "Amended Final Order" purporting to correct a "typographical error" in the conditions stated in the August 16 order and ordering that Granek could not treat *female* patients during his probation period; he was permitted to treat male patients. Granek was served with a copy of the Amended Final Order under a cover letter advising him of his right to seek rehearing within twenty days of receipt. He did not file a motion for rehearing specifically addressed to this order.

9

On October 25, 2002, shortly before the temporary injunction was to expire,[6] Granek obtained, in his pending suit for judicial review, a new temporary injunction enjoining the Board from enforcing its April 24 order pending trial on the merits.[7]

On July 18, 2003, the district court heard Granek's administrative appeal on the merits. On September 4, the court rendered judgment reversing and remanding "the action of the Texas State Board of Medical Examiners," with apparent reference to the Board's September 23, 2002 Amended Final Order. The district court held that the $25,000 administrative penalty could not be supported by the findings and conclusions adopted by the Board. Specifically, the penalty contradicted conclusion of law 19, that "there is insufficient evidence to determine an appropriate administrative penalty against Respondent." The court affirmed the Board's order in all other respects. On remand, the Board accepted the district court's judgment and opted to "take no further action regarding the imposition of any administrative penalty" against Granek.

Granek now appeals the Board's order concluding that grounds exist for discipline and imposing sanctions against him.

**DISCUSSION**

Granek brings five issues, complaining that: (1) the Board violated due process by waiting until its allegations were stale and he had suffered actual prejudice before prosecuting its disciplinary action against him; (2) the Board's findings of grounds for discipline are not supported

---

[6] *See* Tex. Occ. Code Ann. § 164.011(c) (West 2004).

[7] By this juncture, under the limited scope of the remand, the Board had already replaced its original April 24 order with the September 23 Amended Final Order. Granek apparently sought this relief out of an abundance of caution that the original April 24 order might still be effective.

by substantial evidence; (3) the Board committed an error of law in modifying the ALJ's PFD to add its four-paragraph explanation regarding sanctions because it contains unproven assertions regarding Granek's conduct; (4) the Board committed an error of law and exceeded its statutory authority by predicating its disciplinary findings upon legal duties derived from *Lunsford v. Board of Nurse Examiners*; and (5) the Board committed an error of law by applying a preponderance of the evidence standard, rather than clear and convincing standard, to the administrative hearing seeking to revoke or suspend his license. *See* Tex. Gov't Code Ann. § 2001.174(2) (West 2000).

As a preliminary matter, the parties dispute whether we must address and affirm each disciplinary ground found by the Board in order to affirm its order. As previously noted, the Board made ultimate conclusions of law that Granek's conduct constituted three grounds for discipline: (1) Granek's failure to attend L.H. violated sections 164.051(a)(1) and (6) and 164.052(a)(5) of the occupations code; (2) Granek was disciplined by HCA so as to constitute a ground for discipline under section 164.051(a)(7); and (3) Granek's improper contact with K.G. and J.G. violated sections 164.051(a)(1) & (6) and 164.052(a)(5). Any one of these grounds could have independently supported the Board's disciplinary action. *See* Tex. Occ. Code Ann. § 164.001(b). The Board points out that where its disciplinary sanction is based upon multiple, independently sufficient grounds, we affirm the order if any one of the grounds can support the sanction awarded. *Texas State Bd. of Med. Exam'rs v. Scheffey*, 949 S.W.2d 431, 436 (Tex. App.—Austin 1997, writ denied); *Guerrero-Ramirez v. Texas State Bd. of Med. Exam'rs*, 867 S.W.2d 911, 918 (Tex. App.—Austin 1993, no writ). Relying on this principle, the Board contends that we should affirm its order if even a single disciplinary ground is legally supported.

11

In our original opinion, we overruled Granek's issues with regard to the two disciplinary grounds relating to L.H. and presumed, in light of *Scheffey* and *Guerrero-Ramirez*, that we did not need to address his issues as to the third ground relating to improper contact with patients. On rehearing, Granek asserted that, according to its order, the Board did not base the sanctions it assessed on each found violation independently or alternatively, but relied on the cumulative weight of all three violations.[8] He contended that by holding that the two grounds relating to abandonment of L.H. supported the Board's disciplinary sanctions, we improperly speculated regarding the Board's reasoning and substituted our judgment for that of the Board. Granek also observed that, in assessing sanctions, the Board appeared to rely primarily on its disciplinary ground that Granek had improper contact with patients, yet we did not review the Board's findings and conclusions supporting that important ground.

Without deciding whether we are necessarily required to do so, we will proceed to examine each of the three disciplinary grounds found by the Board.

**Due process**

In his first issue, Granek urges that the Board violated his due process rights by waiting over thirteen years to prosecute its allegations regarding improper contact with K.G. and J.G. and over six years to prosecute its allegations regarding L.H. and the HCA disciplinary action.

---

[8] Following its ultimate conclusions of law finding each ground for discipline, the order states: "Based on the foregoing, the Board should discipline Respondent."

12

Citing several cases from other jurisdictions involving delays by medical or other professional disciplinary boards, Granek argues that due process barred the Board from prosecuting its disciplinary action because the delay has caused him actual prejudice. *See Appeal of Plantier*, 494 A.2d 270 (N.H. 1985). As proof of actual prejudice, he cites examples from the record purporting to illustrate that "[e]very fact witness at the administrative hearing testified to problems remembering the events at issue" and that "[t]he delay also caused the loss of physical evidence." The Board characterizes Granek's examples of alleged prejudice as out-of-context references regarding immaterial details that stem from "Dr. Granek's counsel's confusing cross examination." The Board further contends that even if its delay did cause Granek prejudice, its order should not be reversed because the appropriate legal standard governing Granek's due-process complaint is that employed by the Texas Court of Criminal Appeals with regard to pre-indictment delay. *See Ibarra v. State*, 11 S.W.3d 189, 193 (Tex. Crim. App. 1999). This test requires a showing of both actual prejudice and that the State intentionally delayed in order to gain a tactical advantage over the defendant. *Id*. at 193.

### *Due process analysis of agency prosecutorial delay*

Claims regarding deprivation of constitutional rights present questions of law and we accordingly review them *de novo*. *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002). The due process protections of our federal and Texas constitution apply to agency proceedings. *See Langford v. Employees Ret. Sys.*, 73 S.W.3d 560, 568 (Tex. App.—Austin 2002, pet. denied); *see also Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984) ("when a denial of due process has resulted in the prejudice of substantial rights of a litigant," agency's

action is arbitrary and capricious even if supported by substantial evidence); Tex. Gov't Code Ann. § 2001.174(2)(A) (West 2000). Although statutes of limitations provide the primary assurance against prosecution of unduly stale claims or charges, due process can provide independent and additional protections. *See Ibarra*, 11 S.W.3d at 193 (due process provides some protection against undue pre-indictment delay in murder prosecution, which has no statute of limitations in Texas); *State v. McCoy*, 94 S.W.3d 296, 301-02 (Tex. App.—Corpus Christi 2002, no pet.) (addressing due process claim based on alleged pre-indictment delay in prosecuting crime within applicable limitations period). The fact that the legislature has not prescribed a limitations period for the Board's disciplinary proceedings does not foreclose Granek's due-process complaint. *See generally* Tex. Occ. Code Ann. §§ 164.051-.204 (West 2004). At the same time, the fact that the Board may have delayed beyond the limitations periods for crimes and torts comparable to Granek's alleged acts[9] does not in itself compel us to find a due-process violation.

To address Granek's due process complaint, we must first ascertain the appropriate standard to apply. Neither party cites any Texas case addressing the due-process implications of pre-prosecution delays in agency disciplinary actions. The Board urges that we apply the test applicable to due-process complaints regarding pre-indictment delay in criminal cases, which requires a showing of both actual prejudice and that the government intentionally delayed in order to obtain a tactical advantage over the accused. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977);

---

[9] *See* Tex. Pen. Code Ann. §§ 21.07 (West 2003) (public lewdness, classified as misdemeanor), 22.01 (West Supp. 2004-05) (assault, classified as misdemeanor); Tex. Code Crim. Proc. art. 12.02 (West 2005) (two-year statute of limitations for misdemeanors); Tex. Civ. Prac. & Rem. Code §§ 16.003(a) (West 2002) (two-year statute of limitation on civil actions), 74.251(a) (West Supp. 2004-05) (two-year statute of limitations for medical malpractice claims).

14

*Ibarra*, 11 S.W.3d at 193. Granek responds that this test, derived in the criminal context, is inappropriate for civil administrative proceedings and that we should look solely to whether the delay caused him actual prejudice. *Cf. City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 262-63 (Tex. 2001) (in addressing due process claim regarding hearing procedure, questioning whether procedure caused actual injury). We agree with Granek that he is not required to show that the Board intentionally delayed its prosecution against him to obtain a tactical advantage but need show only actual prejudice.

The requirement that criminal defendants complaining of due process violations from pre-prosecution delay prove intentional delay for tactical advantage derives from judicial recognition of the unique responsibilities and role of prosecutors. In *Lovasco*, the United States Supreme Court reasoned that due process would tend to be served, rather than undermined, by permitting a prosecutor to fully investigate a criminal case "until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt" before seeking indictment. *Lovasco*, 431 U.S. at 795. The court emphasized the professional duties of prosecutors, the demands of proving criminal charges beyond a reasonable doubt, and the deference traditionally afforded prosecutorial discretion in determining whether and how to proceed with criminal prosecutions. *Id*. at 790-95.

These characteristics of criminal prosecutions and prosecutors are lacking in Board disciplinary proceedings. Such proceedings are civil in nature, and, as we discuss below, the Board is not required to prove its case beyond a reasonable doubt. *See* Tex. Occ. Code Ann. §§ 165.001-.103 (West 2004). Moreover, at least in this case, there is no suggestion that the Board's long delay

15

was the legitimate product of investigative efforts warranted by the Board's need to gather evidence and prepare sufficiently to prevail. The Board's claims rested upon straightforward "swearing matches" between Granek and other witnesses and tended to be weakened, rather than strengthened, by the passage of years, as the proceedings before the ALJ ultimately demonstrated.[10] While we are not second-guessing the Board's administrative decisions regarding resource allocation or the haste with which it has processed disciplinary complaints in the past, we note these circumstances because they distinguish the Board's delay in this case from the prosecutorial investigative delay that underlies the due process standard articulated in *Lovasco* and *Ibarra*.[11]

Accordingly, in order to prevail on his due process defense, Granek need only prove that the Board's delay caused him actual prejudice. This requires us to consider the degree of harmful effect from delay that will rise to constitutionally significant prejudice. The ALJ expressed grave concern that the Board's allegations were stale. However, this does not mean that Granek's due process rights were violated. Not all deterioration in the quality of proof due to delay constitutes actual prejudice. The fact that witness memories fade over time is an inherent feature of eyewitness testimony and memory, like other matters bearing on the accuracy of a witness's perceptions, is traditionally tested through cross-examination and weighed by the fact-finder. In delineating the

---

[10] For example, the complainant supporting certain other of the Board's allegations below, a patient named P.G., died during the pendency of the complaint, crippling the Board's ability to prove those allegations.

[11] We also observe that, under the Board's proposed due process test, it is questionable whether defendants could ever establish that a prejudicial delay by the Board was intentionally sought for tactical advantage. Texas law shields virtually all Board investigative materials from discovery. Tex. Occ. Code Ann. § 164.007(c) & (d) (West 2004).

16

point at which actual prejudice arises, we must avoid improperly encroaching into this traditional purview of the fact-finder.

We obtain guidance regarding the nature of actual prejudice from Texas criminal cases and administrative disciplinary decisions from other states. The Texas Court of Criminal Appeals has implied that "proof that exculpatory evidence or witness became unavailable to [the defendant] during the delay" might establish constitutionally significant prejudice. *Ibarra*, 11 S.W.3d at 193. In analogous cases from other states involving pre-prosecution delays in agency disciplinary proceedings, those courts have applied similar due-process standards, considering the extent to which agency delay has caused witnesses to become unavailable or the defendant or other witnesses to forget the relevant events. *Compare Sibley v. North Carolina Bd. of Therapy Exam'rs*, 566 S.E.2d 486, 488 (N.C. App. 2002) (despite over five-year delay, "the record before us does not reveal that any of the witnesses had problems recollecting the events which transpired, nor has petitioner shown that any witness is now unavailable, nor has petitioner shown difficulty in remembering the events."); *Giffone v. DeBuono*, 263 A.2d 713, 714-15 (N.Y. App. Div. 1999) (in 1997 agency disciplinary proceeding relating to events in 1970s and 1980s, held that defendant failed to show actual prejudice where he could not demonstrate particular lost documents, witnesses, or items of evidence which, if available, would cast doubt upon opposing evidence), *and Reddy v. State Bd. of Prof'l Med. Conduct*, 259 A.2d 847, 848-49 (N.Y. App. Div. 1999) (no due process violation where "proof of the alleged misconduct was primarily based upon the testimony of the complaining witnesses and petitioner, who recalled details of the events with clarity"), *with Appeal of Plantier*,

17

494 A.2d 270, 272-75 (N.H. 1985) (due process violated by prosecution of decade-old allegation where sole evidence was the patient's eyewitness testimony, and doctor and staff had no independent recollection of patient's fifteen-minute appointments). These courts have also looked to whether the relevant events were contemporaneously recorded and whether the defendant had early notice of the allegations against him. *See Sibley*, 566 S.E.2d at 488 (noting that in lawsuit filed two years after alleged incident, accuser had answered interrogatories under oath; "consequently, [the defendant] was aware of the specifics of the allegations in the Board's notice of hearing" two years thereafter); *Giffone*, 263 A.2d at 714-15 (defendant had retained office notes from appointments where disputed events allegedly occurred); *Appeal of Plantier*, 494 A.2d at 274 (while stale allegations based solely on credibility of eyewitness accounts "significantly increase the problems of proof and . . . increase the danger of false, fraudulent, frivolous, speculative or uncertain claims," "disciplinary actions turning on evidence that is documentary in nature are less likely to be prejudiced by the passage of time.").

Having identified the appropriate standard governing our analysis of Granek's due process issue, we now apply it to each of the three disciplinary grounds the Board prosecuted against him.

### *Application*

#### *Improper contact allegations*

We conclude that the Board violated due process by prosecuting its allegations that Granek improperly touched K.G. after a thirteen-year delay. We find it significant that the ALJ

18

observed firsthand that the "staleness of K.G.'s complaint was more of a disadvantage to Respondent than Staff." Moreover, the ALJ found that, at most, Granek had made inadvertent contact with K.G.—a finding that the Board adopted—and credited Granek's assertions that he could not recall the incidents K.G. alleged. There was no evidence of any contemporaneous or proximate event that would have put Granek on notice of any complaint regarding contact with K.G. It was undisputed that K.G. never mentioned her concerns to Granek, and there was no documentary evidence memorializing the incidents she alleged.

Furthermore, Granek estimated that during his career he had handled 250,000 patient visits involving 25,000 patients. We agree with the ALJ that Granek "could not be expected to remember every arm position or contact he maintained during some six office visits [with K.G.], the last of which occurred about fifteen years ago." For the same reasons, Granek was incapable of defending against a *thirteen*-year old allegation that, during a handful of these thousands of patient visits, he *unknowingly* made *accidental* contact with a patient's breasts, especially where the sole evidence was the patient's word against his. *See Appeal of Plantier*, 494 A.2d at 272-75. We conclude that the Board violated due process in prosecuting such an allegation.

However, we conclude, as did the ALJ, that "[b]ecause Respondent had contemporaneous notice [of] J.G.'s complaint, staleness was not as much of a concern as with some other complainants." It is undisputed that J.G. confronted Granek following her final patient visit in 1987, complained that he had touched her inappropriately during nearly every one of her patient visits, and told him that it made her uncomfortable. J.G. either told Granek, or Granek discerned,

19

that the source of J.G.'s concerns was his touching of her breasts. Both J.G. and Granek recounted that Granek denied that any contact was intentional. This is the same position that Granek asserted before the ALJ, and continues to assert today. *See Sibley*, 566 S.E.2d at 488 (emphasizing importance of early notice of allegations in alleviating due process concerns).

Furthermore, it is also undisputed that, following the confrontation, J.G. wrote Granek a letter regarding the incident, and that Granek responded by calling J.G., reiterating that he did not deliberately touch her, and assuring her that he did not want her to feel uncomfortable. J.G. and Granek likewise agree that, within a few months, J.G. filed a written complaint with the Tarrant County Medical Society. Although J.G.'s letters and complaint are not in the administrative record, we can discern from testimony that the documents continued to exist and were not lost or destroyed during the intervening years. *See Giffone*, 263 A.2d at 714-15 (importance of defendant's retention of office notes from disputed appointments); *Appeal of Plantier*, 494 A.2d at 274 (acknowledging that disciplinary actions based on documentary evidence "are less likely to be prejudiced by the passage of time").

Granek counters that, while he had notice in 1987 that J.G. believed he had touched her inappropriately, she had been vague regarding the nature of his contact. Granek contrasts the nature of her contemporaneous complaint with J.G.'s testimony before the ALJ in 2001. At the hearing, J.G. testified that she had shielded herself with magazines to prevent Granek from touching her breasts, yet Granek persisted in doing so. Granek claims that he had never heard this version of J.G.'s allegations until she testified at the hearing. He urges that the Board violated due process by

20

forcing him to defend what he asserts were newly fabricated allegations when time had faded memories of various collateral facts that he could have used to rebut them—such as the identities of other hospital staff who may have been present during the alleged incidents, the rooms in which the alleged incidents occurred and their configuration, and whether J.G. was seated or laying down when the alleged incidents occurred.

Such inconsistencies in accounts, however, are ordinarily a subject of cross-examination, not indicia of a due process violation. In fact, Granek did cross-examine J.G. regarding inconsistencies between her contemporaneous accounts and her hearing testimony, as well as the details of her surroundings when the incidents occurred. While at times confused or inconsistent regarding her surroundings when the events in question occurred, J.G. testified in detail regarding how Granek had touched her and remained unequivocal as to those facts. *See Reddy*, 259 A.2d at 848-49 (no due process violation where complainant "recalled details of the events with clarity."). We also emphasize that the ALJ, the sole judicial actor to hear J.G.'s testimony and cross-examination firsthand, found her to be a "credible witness." We cannot conclude that the Board's prosecution of the allegations relating to J.G. violated due process.

*Allegations regarding L.H.*

We conclude that the Board's prosecution of its two allegations relating to L.H. also did not violate due process. The ALJ—the sole judicial actor in a position to hear the witness's testimony firsthand and assess memory and other factors bearing on credibility—did not appear to regard the Board's six-year delay as creating the type of staleness problems present with the

21

improper contact allegations. Granek cites the following as proof of actual prejudice: (1) two eyewitnesses, Drs. Green and Rosenthal, testified based on their notes or medical records rather than independent recollection; (2) Dr. Green testified that he "almost remember[ed]" a letter being written to Granek upholding his initial suspension and that Green did not remember the HCA board's final decision but only "the spirit of the final decision"; (3) no written record of the HCA board's final decision survived; (4) Dr. Green could not recall certain details regarding his conversations with Granek or Dr. Bruhl, the emergency room physician; (5) Dr. Bruhl testified that he could not recall the exact words of his conversation with Granek, but "just the gist of the conversation," explaining "remember, this is six years ago, and I'm doing my best to—give a fair representation of what my—I mean an accurate representation of what my recall is." We have reviewed the record and conclude that, when viewed in their proper context, none of these examples establish actual prejudice that could give rise to a due-process violation.

Regarding Drs. Green and Rosenthal's reliance on notes, at least one court has pointed to the existence of contemporaneously recorded notes as a factor which mitigates the potential prejudice from a stale agency disciplinary claim. *See Giffone*, 263 A.2d at 714. As for Dr. Green's testimony regarding HCA's disciplinary actions against Granek, Granek himself acknowledged receiving a private letter of reprimand from the hospital regarding his actions toward L.H. Furthermore, the reference to Dr. Green's reliance on the "spirit of the final decision" is taken somewhat out of context. Green testified that he was present when the HCA board orally announced its final decision, and that the decision was to uphold Green's disciplinary action against Granek. Granek's other attacks against the testimony of Drs. Green and Bruhl are chiefly out-of-context

22

references regarding peripheral facts; both testified regarding the material elements of the allegations. Due process was satisfied.

### *Disposition*

We sustain Granek's first issue as to the Board's allegations regarding K.G., but otherwise overrule it. We consider the effect of this disposition on our consideration of the remainder of Granek's issues. Regarding improper contact with patients, the Board made the ultimate conclusion of law that "[b]ased on the Findings of Fact Nos. 45-56 and Conclusions of Law Nos. 10-14, Respondent violated § 164.051(a)(1) and (6) and 164.052(a)(5)." The referenced findings and conclusions concerned both K.G. and J.G., and included the finding that "[o]n more than one occasion during an office visit, Respondent intentionally touched his patient J.G.'s breast when she tried to avoid his touching by covering her breasts with a magazine." This finding, if otherwise valid, would alone support the Board's ultimate legal conclusion that disciplinary grounds existed under sections 164.052(a)(5) and 164.051(a)(1) and (6). *Cf. Texas State Bd. of Med. Examn'rs v. Koepsel*, 322 S.W.2d 609, 611-15 (Tex. 1959) (sexual assault of patients constituted "grossly unprofessional or dishonorable conduct . . . likely to deceive or defraud the public" under statutory predecessor to occupations code section 164.052(a)(5)). We accordingly sustain Granek's first issue as it concerns K.G.'s allegations, but otherwise overrule it, and proceed to consider Granek's remaining issues as they concern the Board's disciplinary grounds regarding J.G. and L.H.

## Standard of proof

In his fifth issue, Granek urges that the Board committed an error of law by utilizing a preponderance of the evidence standard in making its factual determinations regarding each of its

23

claims. Granek argues that due process required the Board to apply a "clear and convincing" standard of proof. He relies on what he characterizes as a "trend" in other states toward holding that due process requires clear and convincing evidence in medical disciplinary actions. *See*, *e.g.*, *Nguyen v. Washington*, 29 P.3d 689 (Wash. 2001); *Painter v. Abel*, 998 P.2d 931 (Wyo. 2000); *Johnson v. Board of Governors*, 913 P.2d 1339 (Okla. 1996).

There is no Texas authority supporting such a proposition and we have recently rejected a similar contention with regard to professional licenses issued by the Motor Vehicle Board. *See Pretzer v. Motor Vehicle Bd.*, 125 S.W.3d 23, 38-39 (Tex. App.—Austin 2003), *aff'd in part and rev'd in part*, 138 S.W.3d 908 (Tex. 2004). We emphasized that agency license-revocation proceedings are civil in nature, that in civil cases "[n]o doctrine is more firmly established than that issues of fact are resolved by a preponderance of the evidence, and that Texas applies the clear and convincing standard in civil cases only in 'extraordinary circumstances,'" such as civil commitment hearings and involuntary termination of parental rights. *Id*. at 38-39 (internal quotations omitted). Following *Pretzer*, we continue to hold that the proper standard of proof in agency factual determinations is preponderance of the evidence. We overrule Granek's fifth issue.

**Substantial evidence**

In his second issue, Granek contends that the Board's findings and conclusions establishing grounds for discipline are not supported by substantial evidence. Relatedly, in his fourth issue, Granek complains that the Board committed an error of law in relying on concepts of physician duties derived from *Lunsford v. Board of Nurse Examiners* as support for its conclusions

24

that disciplinary grounds existed . 648 S.W.2d at 395. Granek asserts that *Lunsford* is inapplicable and distinguishable because it addressed the duties of a nurse, not physicians, and involved a patient appearing at a hospital and requesting assistance from an on-duty nurse, whereas Granek had indisputably left the hospital and was not on call. In response, the Board does not dispute that *Lunsford* is inapposite,[12] but asserts that its references to the case did not prejudice Granek's substantial rights because there was other support for the Board's conclusions of law authorizing discipline. We agree with the Board that substantial evidence supports its findings and conclusions authorizing discipline and that its references to *Lunsford* did not prejudice Granek's substantial rights.

When reviewing an agency decision under the "substantial evidence" test, we consider the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (West 2004). We may not substitute our judgment for that of the agency and may only consider the record on which the agency based its decision. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.). The issue before us is not whether the agency reached the correct conclusion, but whether there is some basis in the record for its action. *See City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994); *see also Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). The crux of a

---

[12] We also note that there is apparently no Texas decision applying the *Lunsford* duties to physicians and none that specifically apply to any other health services profession *Lunsford*'s view that a health care professional license is a covenant to serve the people of the State of Texas with "professional skill and power" or a contract "to always act in a professional and honorable manner." *Lunsford*, 648 S.W.2d at 395.

substantial evidence analysis is whether the agency's factual findings are reasonable "in light of the evidence from which they were purportedly inferred." John E. Powers, *Agency Adjudications* 163 (1990). "[Substantial evidence] does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' of fact." *Lauderdale*, 923 S.W.2d at 836 (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988); *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on the appellant. *Charter Med.*, 665 S.W.2d at 453; *Stratton*, 8 S.W.3d at 30. Finally, the agency's decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced that party's substantial rights. *See Locklear v. Texas Dep't of Ins.*, 30 S.W.3d 595, 597 (Tex. App.—Austin 2000, no pet.).

### *Improper contact with J.G.*

We conclude that, even apart from the Board's reliance on *Lunsford*, substantial evidence supports the Board's findings and conclusions that disciplinary grounds existed in regard to Granek's improper contact with J.G.

Granek contends that J.G.'s allegations that he touched her breasts while she was attempting to shield herself with magazines "is too incredible to be believed." Granek points out that the episodes occurred in small examining rooms, in a manner in which the Board's own expert conceded was "just logistically" hard to imagine. Granek adds that his medical records and J.G.'s account agree that there was a medical staff member in the room during some of these episodes.

26

Finally, Granek emphasizes various inconsistencies and contradictions in J.G.'s testimony regarding whether and when a staff member was in the room, the appearance of the room, and the types of examinations or procedures Granek was conducting when the incidents occurred.

In a contested case hearing, the ALJ is the sole judge of witness credibility and is free to accept or reject the testimony of any witness or even accept "part of the testimony of one witness and disregard the remainder." *Southern Union Gas Co. v. Railroad Comm'n*, 692 S.W.2d 137, 141-42 (Tex. App.—Austin 1985, writ ref'd n.r.e.). We are not permitted to substitute our judgment for the ALJ's regarding the credibility of witnesses. *Ford Motor Co. v. Texas Dep't of Transp.*, 936 S.W.2d 427, 429-30 (Tex. App.–Austin 1996, no writ). We must resolve evidentiary ambiguities in favor of the administrative order with a finding of substantial evidence to support the ALJ's decision. *Railroad Comm'n of Tx. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995).

Texas courts have recognized that "incredible, perjured, or unreasonable" testimony is not substantial evidence. *Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Mindful of our limitations as an appellate court evaluating a cold record from a bird's-eye view, we cannot conclude that J.G.'s testimony rises to this level. Although somewhat confused and inconsistent regarding the details of her surroundings when the incidents occurred, J.G. testified unequivocally that Granek touched her breasts despite her attempts to shield herself with magazines. The ALJ heard this testimony firsthand, was able to observe J.G. and her demeanor, and concluded that "J.G. made a credible witness." We cannot second-guess such credibility determinations in the guise of a substantial-evidence inquiry.

27

### *Failure to attend L.H.*

As previously discussed, the Board concluded that Granek's failure to attend L.H. in the emergency room was a failure "to practice medicine in an acceptable professional manner consistent with public health and welfare," Tex. Occ. Code Ann. § 164.051(a)(6), and "unprofessional or dishonorable conduct that is likely to . . . injure the public." *Id*. §§ 164.051(a)(1), 164.052(a)(5). The Board based these conclusions upon its fact-findings regarding the episode, as well as other legal conclusions setting forth the *Lunsford* duties, which the Board now agrees are inapplicable, and the tort of patient abandonment. Granek asserts there is not substantial evidence supporting a finding of patient abandonment because, at all relevant times, L.H. was under the care of the emergency room physician and staff. *See King*, 918 S.W.2d at 112. We need not address whether Granek's conduct constituted the tort of abandonment because there is other substantial evidence to support the Board's ultimate conclusion that Granek's failure to attend L.H. violated sections 164.051(a)(1) & (6) and 164.052(a)(5) of the occupations code.

Our ultimate inquiry is whether substantial evidence supports the Board's conclusions that Granek violated the statutory disciplinary grounds of "fail[ing] to practice medicine in an acceptable professional manner consistent with public health and welfare" and "committ[ing] unprofessional . . . conduct that is likely to . . . injure the public." *See* Tex. Occ. Code Ann. §§ 164.051(a)(6), .052(a)(5). When enacting these statutory provisions, the legislature did not explicitly reference tort duties or other common law concepts. *Berezowski v. Texas State Bd. of Med. Exam'rs*, No. 03-03-00735-CV, 2004 Tex. App. LEXIS 6255, at *22-23 (Tex. App.—Austin July 15, 2004, no pet.) (memorandum opinion). While such open-ended statutory language invites its

own set of problems, under these circumstances we are required, as with all statutes, to apply its plain meaning to effectuate the legislature's intent. *See Office of the Attorney Gen. of Tex. v. Lee*, 92 S.W.3d 526, 528 (Tex. 2002).

There is substantial evidence that Granek committed these statutory violations. First, the Board's expert, Dr. Christen Held, testified that, based on her review of relevant medical records, Granek's care and treatment of L.H. did not meet the standard of care and was a professional failure to practice medicine consistent with the public health and welfare. *See* Tex. Occ. Code Ann. § 164.051(a)(6). This testimony, which is not challenged on appeal, is sufficient evidence that Granek failed "to practice medicine in an acceptable professional manner consistent with public health and welfare." *Id*. Furthermore, because patients are considered members of the public, as noted in conclusion of law 10, *see Koepsel*, 322 S.W.2d at 611, Held's testimony also supports the Board's conclusion that Granek committed "unprofessional . . . conduct that is likely to . . . injure the public." Tex. Occ. Code Ann. §§ 164.051(a)(1), .052(a)(5).

### *HCA disciplinary action*

The Board's controlling conclusion of law that Granek violated occupations code section 164.051(a)(7) is based on fact-findings that state, in relevant part, that Granek was summarily suspended by HCA chief of staff Dr. Larry Green, Granek then appealed the suspension to an *ad hoc* peer review committee at HCA, the committee rescinded the summary suspension but recommended a probated twelve-month suspension with monitoring, and the HCA Board of Trustees rendered a final decision affirming the peer review committee's recommendation. Granek first contends that

29

there is not substantial evidence of the action taken by the HCA board because the final decision is missing from the hospital's records. We reject this argument because Dr. Green testified that he was present when the HCA board orally announced its decision to affirm the recommendation of a probated twelve-month suspension with monitoring.

Granek next argues that there is not substantial evidence of the other elements of section 164.051(a)(7), namely, that the Board found that the HCA disciplinary action "was based on unprofessional conduct . . . that was likely to harm the public." Tex. Occ. Code Ann. § 164.051(a)(7)(A). We have already concluded that there is substantial evidence to support the Board's conclusion that Granek's failure to attend L.H. constituted "unprofessional . . . conduct that is likely to . . . injure the public. *Id*. §§ 164.051(a)(1), .052(a)(5). Because the HCA disciplinary action was directed to the same conduct, we likewise conclude there is substantial evidence to support discipline under section 164.051(a)(7).

We overrule Granek's second and fourth issues.

**The Board's explanation regarding sanctions**

Having concluded that the Board's determination that it had grounds to discipline Granek presents no grounds for reversal, we now turn to whether its actions in determining sanctions require reversal.

In his third issue, Granek contends that the Board improperly modified the ALJ's order by replacing conclusions of law 20 and 21 with its "ridiculous four paragraph insert," which Granek contends does not identify any of the permissible bases under government code section

30

2001.058(e) and contains factual assertions unsupported by the evidence and inconsistent with the Board's own adopted findings.

An agency may modify an ALJ's order or change an ALJ's finding of fact or conclusion of law only if the agency determines that (1) the ALJ improperly applied or interpreted the law, agency rules or policies, or prior administrative decisions; (2) the ALJ based her decision on a prior administrative decision that is incorrect; or (3) a finding of fact contains a technical error requiring correction. Tex. Gov't Code Ann. § 2001.058(e) (West 2000). The agency is required to explain with particularity its specific reason and legal basis for each change made. *Id.*; *Levy v. Texas State Bd. of Med. Exam'rs*, 966 S.W.2d 813, 815-16 (Tex. App.—Austin 1998, no pet.).

The Board responds that section 2001.158(e) is not implicated for two reasons. First, the Board argues that an ALJ's recommendation regarding penalties is not the type of finding of fact or conclusion of law that is presumptively binding on the Board. *See Brinkemyer*, 662 S.W.2d at 956; *Fay-Ray Corp. v. Texas Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 368 (Tex. App.—Austin 1998, no writ). Second, the Board urges that Granek waived his right to complain of the Board's compliance with section 2001.058(e) by failing to file a motion for rehearing after the Board issued its September 23 Amended Final Order. Finally, the Board contends that Granek was not prejudiced by the removal of the two conclusions of law because it subsequently modified its sanctions to a three-year probated suspension, which it characterizes as essentially the same sanctions that the ALJ had recommended.

We conclude that section 2001.158(e) is implicated by the Board's actions. Granek preserved his right to complain of the Board's explanation by filing a motion for rehearing to the

31

Board's original April 24 order.[13]  We agree with the Board that it is not required to give presumptively binding effect to an ALJ's recommendations regarding sanctions in the same manner as with other findings of fact and conclusions of law.  However, the Board nonetheless provided a "specific reason and legal basis" for its rejection of proposed conclusions of law 20 and 21 and the sanctions the ALJ had recommended.  The Board explained that "[t]he ALJ's proposed conclusions of law are not really conclusions of law at all, but recommended sanctions.  While it may be appropriate for the ALJ to recommend a sanction, it is ultimately up to the Board to determine what the appropriate sanction should be."  The Board went on to "conclud[e] that the revocation of Respondent's license is the only sanction that will adequately protect the public" and, as previously noted, to elaborate at some length regarding its reasons for imposing that penalty.

In its explanation, the Board represented that Granek had engaged in the "conduct of fondling and molesting patients while performing ophthalmologic examinations on them," had "engaged in this conduct over a period of many years," had "an inability to control his prurient desires," and "defects in character," and would continue "assaulting, fondling or molesting . . . patient[s] . . . under the guise of practicing medicine" if allowed to retain his medical license.  None of these representations are supported by the Board's findings, and several are flatly contradictory.  The Board established that Granek intentionally touched the breast of only one patient, J.G.; proved only that he had *inadvertently* touched the breast of K.G., a claim we have found is barred by due

---

[13] Granek did not oppose the remand preceding the September 23 Amended Final Order, and the remand was limited solely to "a reconsideration and possible further action relating to the penalty imposed."  Because Granek complains not of the penalty imposed in the Amended Final Order, but of the Board's inclusion of its explanation for its original revocation sanction, he preserved error by raising the complaint in his motion for rehearing of the April 24 order.

process; and failed to prove any other allegations of this nature regarding other patients. Furthermore, there is no evidence that Granek "engaged in this conduct over a period of many years"; J.G. testified to, at most, a three to four year period during the 1980s in which the touching episodes occurred, the last of which was in 1987. The Board's own findings state that Granek had changed his behavior since 1994 and "was not shown to constitute a continuing threat to the public."

The gravamen of the Board's explanation is that it imposed its original revocation sanction based on its own opinions regarding improper contact allegations that had not been proven. Whatever its original implications, the Board suggests that the continued inclusion of this explanation in its orders does not prejudice Granek's substantial rights because it refers to a sanction that the Board no longer seeks. We disagree.

The Board's order now requires Granek to provide a copy of the order to all health care facilities where he had or sought privileges. In other words, Granek must provide to these institutions a document containing unproven assertions that he had "fondl[ed] and molest[ed] patients while performing ophthalmologic examinations on them," had "engaged in this conduct over a period of many years," and was a continuing threat due to his "inability to control his prurient desires." These statements were included in a Board order, giving them the imprimatur of a legitimate adjudicative determination. We can fathom no legitimate basis for the Board to include these assertions in its order, especially where it now no longer seeks to impose the revocation sanction to which the explanation was addressed. We hold that the Board's explanation violates section 2001.058(e) and is arbitrary and capricious. *See* Tex. Gov't Code Ann. § 2001.174(2) (West 2000). We sustain Granek's third issue.

**CONCLUSION**

We conclude that any findings of fact or conclusions of law referring to conduct with K.G. are improper because the Board was barred by due process from prosecuting its thirteen year-old allegations regarding K.G. However, its ultimate conclusion that disciplinary grounds exist for Granek's improper contact with patients is supported by its findings, conclusions and evidence regarding J.G. We also overrule Granek's issues concerning the two disciplinary grounds relating to L.H. However, we find arbitrary and capricious the Board's four-paragraph explanation grounding sanctions on unproven assertions of his "fondling and molesting patients . . . over many years" and uncontrollable "prurient desires." These portions of the Board's order violate section 2001.058(e). *See* Tex. Gov't Code Ann. § 2001.058(e).

We reverse and remand to the Board for further proceedings consistent with this opinion. *See id*. With the foregoing exceptions, we affirm the trial court's judgment.

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton;
    Justice Kidd Not Participating

Affirmed in Part; Reversed and Remanded in Part

Filed:   August 26, 2005