# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00336-CV

**James Marsh, Appellant**

**v.**

**State Board for Educator Certification, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN103656, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this appeal from the revocation of a teaching certificate, we must determine whether the district court's judgment affirming an administrative order was supported by substantial evidence. Appellant James Marsh argues that the appellee State Board for Educator Certification denied him "substantive" due process by (i) arbitrarily determining that his past acts made him currently "unworthy to instruct the youth of Texas" and (ii) failing to follow its own rule stating that the Board had the burden of proving his "unworth[iness]" in the hearing process. Alternatively, if the burden-shifting was appropriate, Marsh argues that the Board denied him due process by failing to give him notice that he would bear the burden of proving his rehabilitation at the hearing. Because we conclude that Marsh's allegations of arbitrariness, improper burden-shifting, and lack

of notice are without merit and that substantial evidence supports the district court's judgment, we affirm.

**BACKGROUND**

The State Office of Administrative Hearings ("SOAH") considered this matter pursuant to an agreement with the Board. *See* Tex. Gov't Code Ann. § 2003.021 (West Supp. 2005). Before the administrative hearing, the parties presented the administrative law judge ("ALJ") with stipulated facts, including the following:

- Marsh was arrested on the charge of sexual assault on a child [his stepdaughter, R. F.] in Sarpy County, Nebraska on July 3, 1979. The case was referred to a juvenile court,[1] where Marsh received deferred adjudication for the charge and was ordered to undergo psychiatric counseling.

- During that time, Marsh was R.F.'s stepfather. Marsh was a major in the Air Force, and the family lived on the Offut Air Force base in Nebraska.

- The Air Force conducted an investigation into Marsh's abuse of R.F. During that investigation, the Air Force confiscated a diary in which Marsh recorded some of the incidents of abuse of R.F. The transcript of the diary is included in the Air Force records and included in Exhibit D of Petitioner's Exhibit List as Bates stamp numbers 0000034-37. The transcript of the diary accurately depicts the events to the best of Marsh's recollection and accurately depicts his frame of mind at the time the diary was made.

- Marsh holds a Texas Teacher Certificate, which he received on September 6, 1989. His active certification is a Mid-Management Administrator (Grades PK-12) certificate. During his initial application process, Marsh was not asked nor did he volunteer to the Texas Education Agency ("TEA") that he had been arrested on the charge of sexual assault on a child. At that time, TEA was not legally

---

[1] In her findings of fact, the administrative law judge stated that the records of the sexual assault proceeding against James Marsh were sealed. Our record does not disclose why Marsh's case would have been referred to a juvenile court.

obligated to review the criminal histories of applicants, nor were applicants required to reveal such histories. When TEA issued Marsh's teacher certificates, it had no reason to believe that he had sexually abused a minor.

- R.F. filed a complaint with the Board, alleging that Marsh sexually abused her from 1977-79, when she was 13 to 15 years old. During that time, Marsh was R.F.'s stepfather. Marsh was a major in the Air Force, and the family lived on the Offut Air Force base in Nebraska.

- Marsh has been employed as a teacher or school administrator continuously with various school districts since he received his teaching certificate. The only complaint that the Board, or its predecessor, TEA, received regarding Marsh was R.F.'s, filed on May 11, 1999, which is the subject of the current litigation.

Based on R.F.'s complaint, SOAH held a hearing on May 8, 2001. Only Marsh and R.F. testified at the hearing. Corroborating the stipulated facts, R.F. testified that Marsh's inappropriate conduct was not an isolated incident. She recalled that Marsh

- "frequently" walked in on her and opened the shower curtain while she was showering;

- engaged in sexually inappropriate conversations with her, telling her that he wanted to "teach" her certain sexual techniques;

- suggested that she touch her boyfriends sexually, allow them to do the same to her, and report the details of those encounters to him;

- touched her in a sexually inappropriate manner on a regular basis, including penetrating her sexual organ with his fingers on two occasions;

- offered to buy a truck for her if she would agree to have sexual intercourse with him a specified number of times; and

- gave a back rub to a fourteen or fifteen-year-old female friend of R.F.'s while the friend was clad only in underwear.

3

R.F. stated that Marsh never apologized for the acts he committed against her and that she still struggles with the effects of his sexual abuse. She also testified that, after Marsh became an educator, she followed his career as much as she could and called Marsh's employers to inform them that he was a confessed child abuser. She said that these reports usually caused him to leave the schools.

Marsh testified that he was not aware that R.F. was the individual placing the calls to his employers. Although he sought other employment after R.F.'s calls, he stated that he was never fired from any job or asked to resign. Marsh denied being convicted, tried, or formally charged with any crime as a result of his arrest for sexually assaulting R.F. He also denied being listed as a sex offender at any time. Marsh stated that he attended about sixty therapy sessions, completing his court-ordered therapy in 1980, but he denied undergoing any additional counseling. He further testified that he has unrestricted visitation rights with his two minor daughters.

After hearing both parties' testimony, the ALJ issued a proposal for decision, including findings of fact and conclusions of law. The findings of fact in the proposal for decision included the parties' stipulations. The ALJ's conclusions of law number 4-8 stated:

4. Based on Findings of Fact Nos. 4-7 and 12, Respondent has engaged in intentional, reprehensible sexual assault of a child and such misconduct resulted in severe actual physical or mental harm to a child.

5. A decision-maker may consider the type and severity of harm that was inflicted by the misconduct of a certificate holder upon a student, the intentional nature of the misconduct, the type of misconduct itself, and other relevant factors in deciding whether the offending certificate holder should be disciplined by the Board. 19 Tex. Admin. Code § 249.17(c).

4

6. Based on Findings of Fact Nos. 4-12 and Conclusions of Law Nos. 4 and 5, and pursuant to 19 Tex. Admin. Code § 249.15(c)(2), Respondent is unworthy to instruct the youth of Texas.

7. Based on Findings of Fact Nos. 9-11 and 13, Respondent failed to prove by a preponderance of evidence that he has been rehabilitated and should be allowed to retain his teaching certificate.

8. Based on the foregoing findings and conclusions, the Board should revoke Respondent's Texas Teacher Certificate No. [].

In accordance with the ALJ's recommendation, the Board entered a final order revoking Marsh's teaching certificate on August 29, 2001. The Board denied Marsh's motion for rehearing, and he appealed to the Travis County District Court. The court held a hearing without a record on March 22, 2005, and issued its take-nothing judgment against Marsh on April 20, 2005. Marsh appeals, seeking reversal of the district court's judgment and a new administrative hearing.

**DISCUSSION**

The Board oversees standards of conduct of public school educators and proposes rules that provide for disciplinary proceedings, "including the suspension or revocation of an educator certificate, as provided by chapter 2001 of the government code [Administrative Procedure Act]." Tex. Educ. Code Ann. §§ 21.031, .041(b)(7) (West 2006). As part of its disciplinary authority, the Board may revoke or cancel a person's teaching certificate based on "satisfactory evidence" that the person is "unworthy to instruct or to supervise the youth of this state." 19 Tex. Admin. Code § 249.15(a)(5), (c)(2) (2006).

Marsh's issues on appeal are that the district court erred in affirming the administrative order because the Board denied him "substantive" due process by (i) arbitrarily

determining that his past acts made him currently "unworthy to instruct the youth of Texas" and (ii) failing to follow its rule stating that the Board had the burden of proving his "unworth[iness]" at the hearing. Alternatively, if the burden-shifting was appropriate, Marsh argues that the Board denied him due process by failing to give him notice that he would bear the burden of proving his rehabilitation at the hearing.

**Standard of review**

Our inquiry on appeal is whether the Board's decision is reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole. *See Public Util. Comm'n of Tex. v. Gulf States Utils. Co.*, 809 S.W.2d 201, 211 (Tex. 1991). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Granek v. Texas State Bd. of Med. Exam'rs,*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.) (quoting *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ)).

Agency decisions that are not supported by substantial evidence are deemed arbitrary and capricious. *Gulf States*, 809 S.W.2d at 211; *United Indep. Sch. Dist. v. Whitehawk*, No. 03-04-00662-CV, 2006 Tex. App. LEXIS 2058, at *15 (Tex. App.—Austin, March 17, 2006, no pet.) (mem. op.). An agency decision is arbitrary when its final order denies parties due process of law or fails to demonstrate a connection between the agency decision and the factors that are made relevant to that decision by the applicable statutes and regulations. *Whitehawk*, 2006 Tex. App. LEXIS 2058, at *15 (citing *Reliant Energy, Inc. v. Public Util. Comm'n*, 153 S.W.3d 174, 184 (Tex.

6

App.—Austin 2004, no pet.)). The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play. *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984). A court reviewing a decision for arbitrariness should consider all relevant factors and may not substitute its judgment for that of the agency. *Whitehawk*, 2006 Tex. App. LEXIS 2058, at *15 (citing *Gulf States*, 809 S.W.2d at 211). If the Board failed to follow the clear, unambiguous language of its own regulation, we must reverse its action as arbitrary and capricious. *Gulf States*, 809 S.W.2d at 207.

**"Substantive" due process**

### *Substantial evidence of current unworthiness*

In his first issue, Marsh argues that the Board denied him "substantive" due process under the federal or state constitutions by arbitrarily determining that his past acts made him currently "unworthy to instruct the youth of Texas." Specifically, he contends that the Board's determination of his unworthiness to instruct was arbitrary because, at the hearing, it neither offered evidence of his current unworthiness nor contradicted the evidence of his teaching success. Therefore, Marsh contends that "there is no substantial evidence of current unworthiness to teach the youth of the state, in violation of the Texas Constitution, Article I, Section 13." *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 13.[2]

The State counters that the ALJ considered and rejected Marsh's rehabilitation testimony, including his teaching success, offered in support of his worthiness to instruct Texas

---

[2] The Texas due course of law guarantee, which is nearly identical to the federal due process clause, is in Article I, Section 19 of the Texas Constitution. *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *see also* U.S. Const. amend. XIV; Tex. Const. art. I, § 19. Marsh does not suggest that there is any material distinction between the two provisions.

youth. *See Granek*, 172 S.W.3d at 779 (ALJ is sole judge of witness's credibility and may accept or reject any witness's testimony). The State emphasizes that Marsh offered no rehabilitation evidence—besides his own word—to rebut the Board's evidence of his unworthiness to instruct Texas youth. It further contends that the decision to revoke Marsh's certificate is not arbitrary merely because the ALJ did not accept Marsh's uncorroborated testimony as sufficient evidence of his rehabilitation and worthiness to instruct.

We may not substitute our judgment about a witness's credibility for that of the ALJ. *Id.* at 779. Marsh's situation is similar to that of the respondent in *Texas Education Agency v. Barber*, who did not deny sexually assaulting his 14 year-old former stepdaughter but relied upon his own assertion of worthiness to support the retention of his teaching credentials. No. 164-TTC-191, 1991 TX Educ. Agency LEXIS 233, at \*3 (1991). Revoking his teaching certificate, the Board reasoned that

> Apart from his belief, Respondent presented no evidence or guarantee that such an egregious breach of trust would not reoccur. . . . Possessing or exhibiting an interest in children as objects of sexual gratification is not to be permitted or tolerated within the ranks of teaching professionals of this state. Commission of such conduct as executed by Respondent deprives a teaching professional of the confidence and trust with our schoolchildren.

The fact that Marsh sexually assaulted his stepdaughter some time ago does not diminish the relevance of his behavior to an evaluation of his fitness as an educator. As stated in *Texas Education Agency v. Duke*,

> particular types of crimes, such as sexual crimes against minors or assaults against minors, are so heinous and of such sensitivity that they may more easily raise a

8

presumption within the educational field that the perpetrator of the act is not fit to enter the environs of the teaching profession. Such crimes will always be relevant in assessing an applicant's character development and present fitness to teach, no matter how remote the date of criminal occurrence.

No. 108-TTC-390 (1990); *see also Texas Educ. Agency v. Jackson*, No. 199-TTC-391 (1993).

Here, the record shows that the ALJ considered Marsh's

- failure to undergo any counseling beyond that ordered by the court in 1980;

- voluntary discharge from the Air Force due to unfitness and unacceptable conduct;

- employment as an assistant principal, working with children who were the same age that R.F. was when he abused her; and

- belated expression of his remorse to R.F., which occurred for the first time during the hearing.

This is evidence from which the Board could conclude that Marsh denies a need for treatment, works at a job where he is surrounded by minors over whom he has authority, and lacks remorse. Reasonable minds might accept these facts as adequate to support the conclusion that Marsh is not rehabilitated and is unworthy to instruct Texas youth. *See Granek*, 172 S.W.3d at 778; *Lauderdale*, 923 S.W.2d at 836. Because substantial evidence supports the Board's determination that Marsh is unworthy to instruct the youth of Texas, we conclude that it did not act arbitrarily or capriciously in making that determination and that the district court did not err in affirming the Board's order.

### Shifting burden of proof

Within his first issue, Marsh also argues that the Board deprived him of "substantive" due process by failing to follow its rule stating that the Board had the burden of proving his

"unworth[iness] to instruct the youth of Texas" at the hearing. He notes that the ALJ's seventh conclusion of law states that he failed "to prove by a preponderance of evidence that he had been rehabilitated and should be allowed to retain his teaching certificate." Marsh urges that this finding evidences that the Board improperly shifted the burden to him to prove his rehabilitation and worthiness, rather than following its own rule and proving his *un*worthiness. He contends that this alleged burden-shifting denied him "substantive" due process, was arbitrary and in violation of the Board's own regulation:

> (b) The petitioner in a contested case proceeding under this chapter and 1 Texas Administrative Code, Chapter 155 (relating to Rules of Procedure) is the party in a contested case seeking relief from the decision maker and requesting an adjudicative hearing with the office. The petitioner shall have the burden of proof to show by a preponderance of the evidence entitlement to such relief.

19 Tex. Admin. Code § 249.22(b) (2006).

The Board responds that it had the burden of proving that Marsh was "unworthy to instruct the youth of Texas" and that the finding reflects only that Marsh failed to adduce evidence rebutting the evidence the Board presented of his unworthiness. At the hearing, the Board presented evidence that Marsh committed acts that constituted sexual abuse of a minor. The ALJ determined that this evidence was sufficient to show that Marsh is "unworthy to instruct the youth of Texas." After the Board proved its *prima facie* case to the ALJ, the burden properly shifted to Marsh to rebut the Board's evidence. *See Keeton v. Texas Racing Comm'n*, No. 03-03-00049-CV, 2003 Tex. App. LEXIS 6925, at *22 (Tex. App.—Austin, August 14, 2003, pet. denied) (mem. op.) (holding that

10

once Commission presented *prima facie* evidence of racehorse's positive test result for prohibited drug, burden shifted to challenger to rebut such proof).

We conclude that the Board did not deny due process to Marsh by improperly shifting the burden of proof to him and that the district court did not err in affirming the Board's order. We overrule Marsh's first issue.

**Notice**

Alternatively, in his second issue, Marsh asserts that if the burden-shifting was appropriate, the Board denied him due process by failing to give him notice that he would bear the burden of proving his rehabilitation at the hearing. This argument is predicated upon Marsh's assertion, which we have found to be without merit, that the Board improperly shifted the burden to him to prove his rehabilitation and worthiness to instruct Texas youth. We also hold that the Board satisfied due process with regard to the procedures employed at the hearing.

Review of "procedural" due process complaints like this involves a two-part analysis: a determination of whether the appellant has a liberty or property interest that is entitled to due process protection, and if so, a determination of what process is due. *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In administrative proceedings, due process requires that parties be accorded a full and fair hearing on disputed fact issues. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 576 (Tex. App.—Austin 2006, pet. filed). While administrative hearings need not meet judicial standards, they cannot be arbitrary or inherently unfair. *Id*.

11

The parties agree that Marsh's teaching certificate is an interest entitled to due process protection, including a formal hearing, which he received. Thus, Marsh appears to argue that he was not heard "in a meaningful manner" or provided a "fair hearing." *See Mathews*, 424 U.S. at 333; *Office of Pub. Util. Counsel*, 185 S.W.3d at 576. Marsh states that his certificate was revoked because the Board found "that he did not carry a burden of proof [regarding his rehabilitation] of which he was never given notice." But the record shows that a copy of the Board's original petition containing the allegations against Marsh accompanied the notice of hearing that the Board sent to him by certified and first class mail on February 23, 2001. The notice also explained that the "purpose of the hearing [was] to determine whether [] Marsh has violated Title 19, Texas Administrative Code, ch. 225 through 250, by virtue of his sexually inappropriate behavior with his stepdaughter, [] R.F.."

Additionally, the Board's trial brief, which was served on Marsh before the hearing, contains multiple references to the issue of his rehabilitation and argues that he cannot rely on the passage of time and a satisfactory teaching record to prove that he is rehabilitated. Furthermore, Marsh's own trial brief asserts that the Board "must consider whether, among other factors, the respondent is sufficiently *rehabilitated* to hold a certificate." His trial brief also emphasizes that "the likelihood of future misconduct of a similar or related nature as shown by . . . [the] lack of *rehabilitative* motivation or potential" is a factor to be considered in determining whether to revoke a teaching certificate. 19 Tex. Admin. Code § 249.17(c)(13)(C) (2006) (emphasis added). Based on these conspicuous prehearing references to rehabilitation, we find substantial evidence of Marsh's notice that the burden of proof would shift to him to show his rehabilitation, after the Board's *prima*

12

*facie* showing that Marsh was "unworthy to instruct the youth of Texas." *See Texas Racing Comm'n*, 2003 Tex. App. LEXIS 6925, at \*22. Based on this evidence, Marsh's complaint that he was not given notice that the burden of proof would shift to him to prove his rehabilitation is without merit.

Because we conclude that the Board did not deny Marsh "procedural" due process, we similarly conclude that the district court did not err in affirming the Board's order. We overrule Marsh's second issue.

## CONCLUSION

Having overruled both of Marsh's issues, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   July 28, 2006

13