# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00373-CV

**Motor Vehicle Board and Motor Vehicle Division of the Texas Department of Transportation, Appellants**

**v.**

**Prevost Car (US) Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN303916, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves a final order issued by the Motor Vehicle Board, finding that appellee Prevost Car (US), Inc. ("Prevost") violated sections 4.01 and 5.04 of the motor vehicle commission code by engaging in the business of a dealer in the State of Texas without a license. *See* former Tex. Rev. Civ. Stat. Ann. art. 4413(36), §§ 4.01, 5.04 (West Supp. 2002).[1] The district court reversed the Board's order, finding that it was not supported by substantial evidence and was affected by error of law. We will affirm the judgment of the district court.

---

[1] The motor vehicle commission code was originally located in article 4413(36) of the Texas Revised Civil Statutes. After this case was decided, it was incorporated into chapter 2301 of the Texas Occupations Code. *See* Tex. Occ. Code Ann. §§ 2301.001-.806 (West 2004 & Supp. 2005). We will cite to the former code as it existed at the relevant time.

**BACKGROUND**

The following facts are undisputed and were submitted along with written arguments to the Administrative Law Judge (ALJ) in lieu of an evidentiary hearing at the State Office of Administrative Hearings (SOAH). *See* 7 Tex. Admin. Code § 155.39 (2002).

Prevost is a motor vehicle distributor who was not licensed as a Texas motor vehicle dealer in 2001. Nova Bus is a division of Prevost that manufactures buses for municipal bus systems and maintains its manufacturing and sales facility in Roswell, New Mexico.

In 2001, the City of Beaumont wanted to purchase two buses and, thus, solicited bids from sellers. Nova responded to the City's solicitation, submitting a bid to sell two buses for a certain price that included delivery charges. The City asked Nova for information about their license to sell motor vehicles in Texas. Nova replied that the buses in the bid "are delivered FOB [free on board] Roswell" and that the delivery charges included in the original bid compensated Nova for its contract with a private company to deliver the buses to Beaumont. However, if the City desired to pick up the buses in Roswell, it could do so without paying delivery charges.

On February 20, 2002, after resolving unrelated issues regarding the City's bidding process, the City issued a purchase order for the buses. The purchase order was for the amount originally bid by Nova and provided for delivery of the buses "FOB Beaumont." On February 22, the Motor Vehicle Division of the Texas Department of Transportation issued a complaint against Prevost, docketing the case and scheduling a hearing for April, related to the Board's contention that Nova's response to the City's solicitation of bids for buses was in violation of sections 4.01 and 5.04 of the motor vehicle commission code. *See* former Tex. Rev. Civ. Stat. Ann. art. 4413(36), §§ 4.01,

5.04. On April 17, Nova responded to the City's February 20 purchase order, stating that Nova had "been advised by the Texas DOT [Department of Transportation] that according to their interpretation of the Texas DOT Dealership law, we cannot deliver buses to the City of Beaumont FOB Destination without being in violation of said law and subsequently sustaining the fine associated with the violation." Nova notified the City that the buses must be delivered FOB Roswell, and that the City would be responsible for delivery of the buses to Beaumont. Nova also stated that it would credit the City for the delivery costs, and provided the City with contact information for Bennett Motor Express, Inc., Nova's contractual drive-away service provider. At the end of the letter, Nova stated that because it was required "to comply with this law by the Texas DOT, we consider this contract/purchase order changed as stipulated above." The City then issued another purchase order for the price quoted by Nova for purchase of the buses without delivery to Beaumont. Nova delivered the buses to the City in Roswell, and the buses were transported from Roswell to Beaumont by Bennett Motor Express, Inc. On June 26, Nova issued an invoice that reflected the parties' agreement to the freight term "FOB factory."[2] On July 23, the City paid the invoice in full.

The administrative case proceeded for consideration on written submissions by agreement of the parties. The ALJ issued a Proposal for Decision (PFD), finding that, by (1) "purposefully seeking a Texas buyer through communication of a definitive offer for sale of two buses to the City of Beaumont's Texas address," and (2) "communicating an offer to sell a new

---

[2] There is no evidence in the record that Nova had a factory anywhere other than Roswell, New Mexico.

3

motor vehicle to a retail buyer at a Texas address," Prevost had engaged in the business of a motor vehicle dealer in Texas without a license in violation of Tex. Rev. Civ. Stat. Ann. art. 4413(36), §§ 4.01, 5.04. The ALJ also recommended that Prevost be subject to a civil penalty of $20,000.[3] *See id*. § 6.01 (West Supp. 2002). The Board issued a final order consistent with the PFD and subsequently overruled Prevost's motion for rehearing. Prevost appealed to the Travis County district court, which reversed the Board's order, finding that it was not supported by substantial evidence and that the Board's conclusions were affected by error of law. This appeal followed.

## DISCUSSION

This case hinges on whether Prevost acted as an unauthorized motor vehicle dealer *within the state of Texas*, and thus violated the motor vehicle commission code. In its sole issue, the Board contends that its order was supported by substantial evidence and was not affected by error of law. *See* Tex. Gov't Code Ann. § 2001.174 (West 2004). We will first consider whether the Board's findings of fact, which essentially conclude that Prevost acted as an unauthorized motor vehicle dealer in the State of Texas, were supported by substantial evidence.

When reviewing an agency decision in a contested case, a court shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are affected by error of law or not reasonably supported by substantial evidence considering the reliable and probative evidence

---

[3] Although the Board notes in its brief that motor vehicle manufacturers are prohibited from directly or indirectly owning an interest, operating, controlling, or acting in the capacity of a dealership, *see* Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02C (West Supp. 2002), this issue was not the subject of the contested case and is not before us.

in the record as a whole. *See id.*; *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.). We may not substitute our judgment for that of the agency and may only consider the record on which the agency based its decision. *Granek*, 172 S.W.3d at 778 (citing *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.)). The issue before us is not whether the agency reached the correct conclusion, but whether there is some basis in the record for its action. *See City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994). The crux of a substantial evidence analysis is whether the agency's factual findings are reasonable "in light of the evidence from which they were purportedly inferred." *Granek*, 172 S.W.3d at 778 (quoting John E. Powers, Agency Adjudications 163 (1990)). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' of fact." *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) and *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on the party challenging the findings. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984); *Stratton*, 8 S.W.3d at 30.

Section 4.01 of the motor vehicle commission code provided that

> Except as provided by this Section, no person shall engage in business as, serve in the capacity of, or act as a dealer, manufacturer, distributor, convertor, representative, lessor, or lease facilitator in this State . . . without obtaining a license therefor as provided in this Act and the rules of the Board.

Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.01. Section 5.04 provided, in relevant part, that

No person may engage in the business of buying, selling, or exchanging new motor vehicles unless that person: (1) holds a valid franchised dealer's license issued by the Commission for the make or makes of new motor vehicles being bought, sold, or exchanged.

FOB, shorthand for "free on board," means that title to property passes from the seller to buyer at the designated FOB point. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) and 10 Williston on Contracts, § 1079A, at 94 n.6 (3d ed. 1967)). Moreover, under the circumstances in this case, the Uniform Commercial Code (UCC) provides that

(b) [u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . .

(1) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(2) if the contract requires delivery at destination, title passes on tender there.

Tex. Bus. & Com. Code Ann. § 2.401 (West Supp. 2005).[4]

Nova originally responded to the City's bid with the term "FOB Beaumont." However, after the Texas Department of Transportation objected and before the structure of the transaction was completed, Nova notified the City that it would only sell the buses under the term "FOB Roswell." The City accepted this change, and even recited that it was changing the purchase

---

[4] Section 2.401 was amended effective September 1, 2005. *See* Tex. Bus. & Com. Code Ann. § 2.401 (West Supp. 2005). Because the relevant subsection did not change, we will cite to the amended version for convenience.

order due to concerns by the Department regarding Texas dealership law. The City then contracted with a private company to pick up the buses in Roswell and deliver them to Beaumont. There is no evidence in the record that any Prevost or Nova employee ever physically crossed the New Mexico border into Texas related to this transaction. We find that the response to a bid solicitation and discussions regarding terms of a purchase order, standing alone, are insufficient to conclude that the activity took place within Texas.

When Nova sold the buses "FOB Roswell" and tendered them in Roswell, New Mexico, legal title to the buses was transferred in New Mexico. *See Coleman*, 83 S.W.3d at 807; *CSR Ltd.*, 925 S.W.2d at 594. Furthermore, under the UCC, legal title to the buses passed in New Mexico because the agreement of the parties required Prevost to deliver the buses in Roswell. *See* Tex. Bus. & Com. Code Ann. § 2.401. Therefore, title passed to the City at the time and place of shipment—in New Mexico. New Mexico was the location where Prevost completed its performance with reference to the physical delivery of the goods. *See id*.

The Board acknowledges that the UCC focuses on where the seller completes performance, but argues that the contract was "initiated and made in Texas." However, the issue under the UCC is not where the contract was initiated or made. Rather, the unambiguous language of section 2.401 states that, because it was not otherwise explicitly agreed, legal title passed where the *performance* of the contract was completed. *See id*. Because the contract required delivery at Roswell, title was transferred upon tender of the goods there—not where the contract was initiated or accepted. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176-77 (Tex. 2004) (if statutory text is unambiguous, we must adopt interpretation

7

supported by statute's plain language unless that interpretation would lead to absurd results); *see also* Tex. Bus. & Com. Code Ann. § 2.401.

The parties also dispute the application of another Board decision and its relationship to this case. In *In re License of Ford Motor Co.*, the Board alleged that Ford Motor Company was violating several sections of the motor vehicle commission code by attempting to market preowned vehicles in Texas, via their internet site known as "The Showroom," without a Texas dealership license. *See* 264 F.3d 493, 498 (5th Cir. 2001); *see also* Tex. Rev. Civ. Stat. Ann. art. 4413(36), §§ 4.01, .06(a)(3), (6) & 5.02C(c); Tex. Transp. Code Ann. § 503.021 (West 1999). The federal case revolved around an interpretation of section 5.02C and whether that section was unconstitutional. *See In re License of Ford Motor Co.*, 264 F.3d at 498. Although the parties dispute the factual allegations surrounding the underlying state administrative proceeding in that cause, the facts in *Ford* are distinguishable from this case.

In *Ford*, interested customers could place a refundable deposit and thereby arrange to have a designated vehicle sent to a local dealer to enable them to test-drive the car. *Id*. at 499. Following a test-drive, the customer could then accept or decline to purchase the vehicle at the "no-haggle" price determined by Ford and listed on the website. *Id*. Upon payment or financing approval, Ford would transfer title to the dealer, who, in turn, would transfer title to the customer. *Id*. Twenty-two dealers in the Houston metropolitan area joined the program by signing Dealer Participation Agreements. *Id*. The facts of *Ford* are distinguishable because *Ford* involved the actual and attempted sales of vehicles that were physically located and test-driven by consumers within the State of Texas. The vehicles were transferred to a participating Houston-area dealership

8

where a prospective customer would test-drive the vehicle and could purchase it, transferring title in the Houston area. These and other activities took place in Texas, and title was transferred in the State of Texas. Unlike *Ford*, however, Prevost *responded* to a solicitation for bids; it did not initiate contact with the City. Significantly, title to the buses in this case passed in New Mexico.

Furthermore, our holding is not based on a finding that Prevost was not engaging in business as a dealer, but that it was not engaging in such business "in this State." Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.01.[5] In a factually similar situation, the supreme court has found that courts lack specific jurisdiction over claims such as these on the basis that the transaction did not constitute doing business in the State. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 781 (Tex. 2005). Admittedly, *Michiana* discusses personal jurisdiction, which is not at issue in this case because Prevost does not contest that it is subject to general jurisdiction in Texas. However, we find a discussion of *Michiana* helpful to our review because the facts in this case—regarding whether Prevost engaged in the business of a motor vehicle dealer in this State—are unusually similar to those in *Michiana*—regarding whether Michiana did business in this State by selling a motor vehicle to a Texas resident. *See id.*

In *Michiana*, James Holten, a Texas resident, purchased a recreational vehicle from an outlet store in Indiana. *Id*. at 781. Holten called Michiana in Indiana, sent payment to Indiana,

---

[5] The Board contends that its position is supported by section 1.02, which states that the legislative purpose behind enacting the chapter was related to the fact that the "distribution and sale of motor vehicles in this State vitally affects the general economy of the State and the public interest and welfare of its citizens." Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 1.02 (West Supp. 2002). However, section 1.02 acknowledges that the regulation of the sale of motor vehicles is limited to sales which occur *in this State*, and thus is consistent with our analysis in this case.

paid for delivery to Texas from Indiana, and agreed to resolve every dispute in Indiana. *Id.* When a dispute arose, he filed suit in Texas. Here, the City sent a solicitation for bids to Prevost in New Mexico, sent payment to New Mexico, and paid an independent contractor for delivery to Texas from New Mexico. The supreme court held that Michiana's actions did not constitute sufficient evidence of doing business in this State, *see id.*, and, likewise, we conclude that there is not substantial evidence to show that Prevost engaged in business as a dealer in this State.

Contrary to the dissent's claim that we improperly rely on *Michiana* based on a confusion between our analysis and one of personal jurisdiction, we have expressly recognized the legal distinction between the two cases. Yet, while the legal analysis may be different, the factual theme is consistent: the action of responding to a solicitation for information or bids and a discussion of price regarding the bid, standing alone, is not sufficient to find that an entity has done business in the State of Texas. *See id.* at 794 ("Because Michiana's only contact with Texas was Holten's decision to place his order from there, we reverse the court of appeals' judgment and render judgment dismissing the claims against Michiana for want of jurisdiction."). We cannot uphold the Board's decision that responding to a solicitation for the purchase of a vehicle qualifies as "engaging in the business of a dealership" within the State when the supreme court has held that it does not subject one to specific personal jurisdiction in the State.

Therefore, assuming without deciding that the response to a bid solicitation qualifies as "engaging in the business as a dealer," we hold that under the facts in this case, Prevost did not engage in the business as a dealer *in this State* without obtaining a license required by state law. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.01. The dissent criticizes our assumption on this point.

10

In doing so, however, the dissent fails to understand that the issue here presents two distinct elements. First, whether Prevost "engaged in the business as a dealer," and second whether such business took place "in this State." It is only logical that, without any evidence to support the latter element, discussion of the first becomes unnecessary. It does not matter for purposes of this opinion whether Prevost's actions can be defined as "engaging in business as a dealer" because none of its relevant actions occurred "in Texas."

Although the dissent disagrees with this conclusion, it is important to note that, in reaching its opposite conclusion, the dissent relies on the same facts addressed in our opinion. First, we acknowledge that the original purchase order reflected that the buses were to be delivered to Beaumont, but are cognizant of the fact that such a delivery never actually occurred. A determination of whether or not business occurred in this State cannot be based on some possible action contemplated by the parties during the course of their dealings. Rather, the focus must remain on what actually occurred—delivery of the buses to Roswell, New Mexico. We also note that Prevost declined to deliver the buses in Texas for the stated purpose of not wanting to violate a Texas statute. Contrary to the dissent's claim that our opinion will encourage out-of-state businesses to violate our laws, we do not believe that a party should be punished for shaping its actions in an attempt to comply with our laws. Second, we acknowledge that Prevost responded to a solicitation issued from Beaumont and that the City accepted Prevost's bid—facts which are amplified by the dissent. Yet, as the dissent recognizes, these facts are nothing more than the underpinnings of the contract's formation. We have already clarified that the relevant fact for determining where Prevost engaged in business is the location of the title transfer, not the location of the contact's initiation or

11

acceptance. Third, although the dissent correctly notes that the record demonstrates other, unrelated transactions by Prevost, we do not believe that such transactions provide evidence to support a finding that Prevost's actions *in the instant case* occurred within this State. Importantly, the Board did not scrutinize Prevost's business practices on the basis of any of the outside transactions discussed by the dissent.

The undisputed facts here are that, in response to the City's solicitation, Prevost sold and delivered two buses to the City in New Mexico. From there, the City paid for the buses to be brought into Texas. Accordingly, without substituting our opinion on matters committed to the Board's discretion, we affirm the district court's conclusion that the Board's findings of fact (that Prevost engaged in business as a dealer in the State of Texas) were not supported by substantial evidence and that its conclusions of law (that Prevost violated the motor vehicle commission code) were affected by error of law.[6]

Because we have decided this case on other grounds, we need not reach Prevost's claim that the statutes were unconstitutional as applied by the Board. *See City of San Antonio v. Schautteet*, 706 S.W.2d 103, 105 (Tex. 1986) (citing *San Antonio Gen. Drivers v. Thornton*, 299 S.W.2d 911, 915 (Tex. 1957) (court will not pass on constitutionality of statute if particular case before it may be decided without doing so)).

We overrule the Board's sole issue.

---

[6] An appellate court does not "substitute its opinion" for that of an agency simply by reversing the agency's decision, so long as that reversal is based on a legally permitted ground, such as a lack of substantial evidence to support a finding or the fact that a conclusion is affected by error of law. *See* Tex. Gov't Code Ann. § 2001.174 (West 2004). Otherwise, there would be no purpose of appellate review in administrative cases.

**CONCLUSION**

Having overruled the Board's sole issue, we affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear:   Opinion by Chief Justice Law;
    Dissenting Opinion by Justice Patterson

Affirmed

Filed:   September 26, 2006

13