# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00004-CV

**Kimberly A. Finder, M.D., Appellant**

**v.**

**Texas Medical Board, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
### NO. D-1-GN-08-004200, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Kimberly Finder, M.D., appeals a district court judgment affirming a final order of the Texas Medical Board (the "Board") finding her in violation of the Board's rules prohibiting false, misleading, or deceptive physician advertising and imposing a $5,000 disciplinary penalty against her. In four issues, Dr. Finder contends that the district court erred in affirming the Board's final order. Because we find no error in the Board's final order and we conclude that the Board's order was supported by substantial evidence, we affirm the district court's judgment affirming the Board's order.

### BACKGROUND

Kimberly Finder, M.D., became licensed by the Texas Medical Board in 1985. In 1990, she became board certified in dermatology and has been practicing as a dermatologist in

San Antonio since 1992.  She currently serves as the medical director for The LipoSurgery Clinic, a clinic specializing in tumescent liposuction and selective cosmetic facial procedures for women.[1]

Tumescent liposuction, also referred to as the "tumescent technique," involves injecting large volumes of tumescent solution into the targeted fat before it is sucked out.  Tumescent solution contains dilute amounts of lidocaine, a local anesthetic, and epinephrine, used to restrict bleeding.  Though it is generally agreed that tumescent solution must be used in order to categorize a procedure as tumescent liposuction, the record reflects two distinct opinions regarding the type of anesthesia permitted during a tumescent liposuction procedure.  Dr. Finder claims that tumescent liposuction is defined as liposuction using only the local anesthesia in the tumescent solution, without any additional intravenous (IV) sedation or general anesthesia.  By contrast, Dr. Mario Diana, a San Antonio plastic surgeon who practices liposuction, testified at the administrative hearing that he defines tumescent liposuction as that done using tumescent solution, whether or not additional IV sedation or general anesthesia is used.  Dr. Finder claims that these competing definitions are part of a long-standing "turf war" between dermatologists, who subscribe to Dr. Finder's definition, and plastic surgeons, who agree with Dr. Diana.

Sometime around 2001, Dr. Finder began advertising her practice on the internet at www.theliposurgeryclinic.com.  The website, as viewed by the Board in 2004 (the "website"), contained a chart entitled "Technique Comparison" which included, among other things, the following information:

---

[1] We note that the complaint giving rise to this appeal was not from a patient, nor was it related to the appropriate standard of patient care.  Dr. Finder testified that in her over twenty years practicing dermatology, she has not received a single patient complaint or malpractice claim.

| Consideration | Tumescent Technique | IV Sedation & General Anesthesia |
| --- | --- | --- |
| **Physicians** | Dermatologic Surgeon | Plastic Surgeon |
| **Anesthesia** | Local anesthesia | General anesthesia |
| **Procedure** | Gentle | Rough and hurried |
| **Recovery Time Post Surgery** | Resume activities after surgery. 45 min. walk is recommended day of surgery. Minimal blood loss, reduced bruising and swelling. | More discomfort. Bed rest for 3-7 days. Hospitalization may be required. |
| **Scarring** | Minimal. Smaller incisions drain then close naturally. | Increased, Larger incisions often sutured. |
| **Perforation of internal body organs** | None. Patient is awake. Virtually impossible with gentle suctioning action. | Possible. Patient unconscious. Punctures can occur with unconscious patient due to vigorous suctioning. |

In 2004, the Board filed a preliminary complaint against Dr. Finder, alleging that the website violated section 164.052 of the Texas Occupations Code.[2] *See* Tex. Occ. Code Ann. § 164.052 (West Supp. 2008). Section 164.052 states, in relevant part:

> A physician or an applicant for a license to practice medicine commits a prohibited practice if that person:
>
> . . . .
>
> (6) uses an advertising statement that is false, misleading, or deceptive;

---

[2] Though Dr. Finder has since updated her website in response to the Board's complaint, the Board's sanctions against her are based on the version of the website viewed by the Board in 2004.

(7) advertises professional superiority or the performance of professional service in a superior manner if that advertising is not readily subject to verification;

*Id*. § 164.052(6)-(7).

After an unsuccessful informal settlement conference, the Board filed a formal complaint at the State Office of Administrative Hearings. A hearing was held before an administrative law judge (the "ALJ") to determine whether statements on Dr. Finder's website violated the Board's rules regarding physician advertising. During the hearing, the Board offered the expert testimony of Dr. Diana, Dr. Byron Limmer, a San Antonio dermatologic surgeon, and Karen Porter, an advertising expert. Dr. Finder offered her own testimony, as well as that of experts Dr. Gerald Bernstein, a Seattle dermatologic surgeon, and Dr. Rhoda Narins, a dermatologic surgeon. At the conclusion of the hearing, the ALJ issued a Proposal for Decision ("PFD"), identifying and describing six statements from the website that she found to be material misrepresentations of material facts and thus violated the Board's rules. *See* 22 Tex. Admin. Code § 164.3(1) (2010) (Tex. Med. Bd., Misleading or Deceptive Advertising) (including material misrepresentations of material facts within definition of false, misleading, or deceptive advertising).

The ALJ found that Dr. Finder's website contained the following material misrepresentations: (1) plastic surgeons use general anesthesia when performing liposuction, while she uses local anesthesia; (2) her services virtually eliminate risk, while plastic surgeons use general anesthesia, which shuts down the brain and requires a machine to keep the lungs functioning; (3) dermatologists perform liposuction in a gentle manner while plastic surgeons perform the surgery in a rough and hurried manner; (4) scarring is increased and larger incisions are often sutured when

4

liposuction is performed under IV sedation or general anesthesia; (5) under general anesthesia, internal organs can be perforated due to vigorous suctioning; and (6) bed rest is required for three-to-seven days after surgery under general anesthesia, the patient will experience more discomfort after liposuction under general anesthesia, and bruising and swelling are reduced when surgery is performed under local anesthesia. The ALJ also concluded that Dr. Finder had advertised professional superiority or the performance of professional service in a superior manner and that this advertising was not subject to verification. *See* Tex. Occ. Code Ann. § 164.052(7).

In its final order, the Board adopted all but one of the ALJ's findings of fact and conclusions of law and imposed upon Dr. Finder an administrative penalty of $5,000.[3] After exhausting the administrative remedies before the Board, Dr. Finder sought judicial review of the Board's final order in the district court, which affirmed the Board's order in full. This appeal followed.

### STANDARD OF REVIEW

Our review of the Board's final order is governed by the "substantial evidence" standard of the Texas Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). Under this standard, we presume that the Board's order is supported by substantial evidence, and Dr. Finder bears the burden of proving otherwise. *Texas Health Facilities Comm'n v. Charter*

---

[3] The Board did not adopt conclusion of law number twelve, a sanction recommendation, because it was not a proper conclusion of law. It did, however, impose the ALJ's recommended penalty.

5

*Medical-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). The complaining party cannot satisfy this burden merely by showing that evidence preponderates against the agency's decision. *Id*. at 452.

We may reverse an agency's decision that prejudices Dr. Finder's substantial rights because the Board's findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed the Board's statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2).

To constitute substantial evidence, the reliable and probative evidence in its entirety must be sufficient such that reasonable minds could have reached the conclusion that the agency must have reached to justify the disputed action. *Heat Energy Advanced Tech., Inc. v. West Dallas Coal.*, 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied) (citing *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.3d 114, 116 (Tex. 1988)). We review the Board's legal conclusions for errors of law and its findings of fact for support by substantial evidence. *Id*. We may not substitute our judgment for that of the Board on the weight of the evidence on questions committed to agency discretion. *Charter Medical*, 665 S.W.2d at 452; *see also* Tex. Gov't Code Ann. § 2001.174.

The test is not whether we believe the Board's decision was correct, but whether the agency's factual findings are reasonable "in light of the evidence from which they were purportedly inferred." *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin

6

2005, no pet.) (quoting John E. Powers, *Agency Adjudications* 163 (1990)). The factfinder, here the ALJ, determines the credibility of witnesses and the weight to give their testimony. *Id*. We may not set aside an agency decision merely because testimony was conflicting or disputed, or because it did not compel the agency's decision. *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 510 (Tex. App.—Austin 2007, no pet.) (citing *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1996)).

## DISCUSSION

In four issues on appeal, Dr. Finder argues that the district court erred in affirming the Board's final order because: (1) the Board's order is not supported by substantial evidence; (2) the ALJ abused her discretion in admitting and relying on the testimony of the Board's experts; (3) the Board applied an incorrect and unpublished standard to conclude that Dr. Finder disobeyed its rules on physician advertising, violating Dr. Finder's right to due process; and (4) the Board failed to address Dr. Finder's affirmative defense of commercial speech.

### *Substantial Evidence*

In her first issue on appeal, Dr. Finder contends that the Board's findings are not supported by substantial evidence. Though Dr. Finder frames her first issue in substantial evidence terms, it actually contains two distinct and separate challenges to the Board's order. First, she contends that the findings of underlying fact stated in the order do not fairly support the agency's ultimate conclusions. Second, she claims that the findings of underlying fact do not have reasonable support in the evidence adduced at the evidentiary hearing. Both of these challenges are permitted

7

within our review of the Board's decision. *See Charter Medical*, 665 S.W.2d at 452; *United Res. Recovery, Inc. v. Texas Water Comm'n*, 815 S.W.2d 797, 801 (Tex. App.—Austin 1991, writ denied).

The Board is authorized to impose an administrative penalty of not more than $5,000 per violation against a licensee who has violated a Board rule. *See* Tex. Occ. Code Ann. § 165.003(a) (West 2004). Because the Board imposed a $5,000 penalty upon Dr. Finder, any single violation is sufficient to support the Board's order. For this reason, to affirm the district court's judgment, we need only determine that substantial evidence supports the conclusion that at least one of Dr. Finder's statements violated the Board's rules. We will begin by evaluating whether substantial evidence exists to support the conclusion that the "procedure" section of the "Technique Comparison" chart is false, misleading, or deceptive advertising.

*Procedural Challenge to Findings of Fact*

Dr. Finder first claims that the Board's order did not contain sufficient underlying findings to support its ultimate conclusions. The Board's finding of fact number five recreates a portion of the "Technique Comparison" chart, including the "procedure" section. Under the "Tumescent Technique" column, the procedure is described as "Gentle," whereas under the "IV Sedation and General Anesthesia" column, it is described as "Rough and hurried." Finding of fact number eight states, "Whether a physician is gentle or rough and hurried is not specific to the anesthesia used or the physician's certification." The ultimate conclusions reached by the Board include: "(7) Respondent used an advertising statement that was false, misleading, or deceptive as described in [Tex. Occ.] Code § 164.052(6) and 22 [Tex. Admin. Code] § 164.3(1); and

8

(8) Respondent has made material misrepresentations of material facts, which cannot be substantiated, as described in 22 [Tex. Admin. Code] § 164.3(7)."

Because the Texas Occupations Code does not define false, misleading, or deceptive advertising, we turn to the Board's rules for guidance. They define advertising as information communicated to the public in any manner designed to attract public attention to a physician's practice. 22 Tex. Admin. Code § 164.2 (2010) (Tex. Med. Bd., Definitions). This includes information on the internet. *Id*.

The Board's rules further state that physician advertising is false, misleading, or deceptive, if it contains, among other things, "material false claims or misrepresentations of material facts which cannot be substantiated." 22 Tex. Admin. Code § 164.3(1) (2010) (Tex. Med. Bd., Misleading or Deceptive Advertising).

Dr. Finder argues that the Board's findings did not fairly and reasonably support the Board's conclusions because the Board's order does not specifically identify which statements on the website are "false, misleading, or deceptive" and "material misrepresentations of material facts" or why they are such.

Proper underlying findings of fact should be clear, specific, non-conclusory, and supportive of the ultimate statutory finding. *Charter Medical*, 665 S.W.2d at 452. Mere recitals of testimony or references to or summations of the evidence are improper. *Id.* Such findings should be stated as the agency's findings. *Id.* Dr. Finder argues that finding of fact number five is a mere recitation of the evidence. This finding contains, among other things, the "procedure" section of the "Technique Comparison" chart where, under the "tumescent technique," the procedure is described

9

as "Gentle," and under the "IV Sedation and General Anesthesia" column, it is "Rough and hurried." Rather than being a mere recitation of the evidence, this language constitutes the necessary finding around which the Board's entire disciplinary proceeding revolves. Furthermore, in the absence of a finding of fact identifying which of Dr. Finder's statements the Board considered, Dr. Finder would not have been adequately informed of the basis for the Board's decision. For this reason, the Board's identification of the statements relied upon in reaching its ultimate conclusion qualifies as a proper finding of fact.

Similarly, Dr. Finder argues that finding of fact number eight is also a recitation of the evidence. Finding of fact eight states that "whether a physician is gentle or rough and hurried is not specific to the anesthesia used or the physician's certification." The Board did not, however, simply restate testimony. Instead, it synthesized the relevant testimony of Dr. Finder, Dr. Diana, Dr. Limmer, Dr. Bernstein, and Dr. Narins and stated its resultant finding.

Because the Board found that (1) Dr. Finder's website characterized the procedures under the tumescent technique as gentle and under IV sedation and general anesthesia as rough and hurried, and (2) whether liposuction was gentle or rough and hurried was not specific to the anesthesia used or physician's certification, the Board's conclusion that the "procedure" section on Dr. Finder's website constituted a material misrepresentation of a material fact was reasonably supported by the underlying findings of fact.

Dr. Finder also argues that she should not be "left to guess 'how' and 'why' with respect to each of the ultimate conclusions," citing *Texas Health Facilities Comm'n v. Presbyterian Hospital North*, 690 S.W.2d 564 (Tex. 1985). In *Presbyterian Hospital*, the commission in question

10

made six underlying findings regarding a proposed facility, identifying the number of beds and square feet of the new facility, the cities and counties that would be served, and the forecasted occupancy rates of the facility. *Id*. at 566. The supreme court held that these findings did not support the ultimate conclusion that the proposed facility was not necessary to meet the health care needs of the medical service area. *Id*. at 567. The findings of fact in Dr. Finder's case do not require the inferential leap necessary in *Presbyterian Hospital*. Here, the Board's findings included a specific statement from Dr. Finder's website and a finding of fact which contradicted that statement. No additional information is necessary to reach the Board's conclusion that the website contained material misrepresentations of material fact.

The fact that the Board did not explicitly list the violating statements in its order does not cause it to fail the substantial evidence review.[4] An agency is not required to indicate which underlying facts support each ultimate finding, as long as the reviewing court can fairly and reasonably say that the underlying or basic facts support the agency's conclusion on the ultimate or statutory criteria. *See Smith Motor Sales, Inc. v. Texas Motor Vehicle Comm'n*, 809 S.W.2d 268, 271-72 (Tex. App.—Austin 1991, writ denied). The findings should be sufficient to "inform the parties and the courts of the basis for the agency's decision so that the parties may intelligently prepare an appeal and so that the courts may properly exercise their function of review." *Goeke v. Houston Lighting & Power Co.*, 797 S.W.2d 12, 15 (Tex. 1990). The Board's findings here do this, as evidenced by the fact that both parties' briefs identified specific statements implicated by the

---

[4] While the ALJ's PFD contained a detailed analysis of which statements were material misrepresentations, the Board adopted only the ALJ's findings of fact and conclusions of law, which do not directly list particular statements as false, misleading, or deceptive.

11

Board's findings of fact. Furthermore, there is no precise form in which an agency must articulate its underlying findings and the reviewing court may not subject the agency's order to a "hypertechnical standard of review." *Id.*; *see also State Banking Bd. v. Allied Bank Marble Falls*, 748 S.W.2d 447, 448-49 (Tex. 1988).

For these reasons, we reject Dr. Finder's contention that the Board's ultimate conclusion is not supported by its underlying findings of fact.

*Substantial Evidence*

Dr. Finder further argues that the Board's order does not meet the substantial evidence standard because the record does not support the Board's underlying findings of fact. In our analysis, we again look first to the "procedure" section of Dr. Finder's "Technique Comparison" chart.

Dr. Finder does not allege that finding of fact number five is unsupported by the record, as it is taken directly from the Board's exhibit number four. She does, however, contest the sufficiency of finding of fact number eight, "whether a physician is gentle or rough and hurried is not specific to the anesthesia used or the physician's certification," because she "dispute[s] that the statement[] attributed to her appear[s] on her website." However, this finding of fact is supported by the testimony of Dr. Diana, who testified that the language contained on Dr. Finder's website suggested that the roughness of a procedure depended on the type of doctor and anesthesia used.

Dr. Finder further argues that finding of fact number eight disregards both Dr. Finder's testimony that the type of anesthesia correlates with the speed of a liposuction procedure (and thus, the roughness and hurriedness of the procedure) and Dr. Bernstein's testimony that a surgeon must be gentle when using only local anesthesia because the patient is fully awake and

12

aware.  However, additional testimony contradicted these statements.  Dr. Limmer testified that whether a physician is rough and hurried is not specific to the liposuction technique used, and Dr. Diana testified that the way in which a procedure is performed depends on the physician doing it.  Dr. Finder's own expert, Dr. Bernstein, said it was "very, very hard" to characterize exactly what the words gentle and rough and hurried mean.  He noted that a physician could be gentle while performing liposuction under general anesthesia.  Dr. Narins, a dermatologist, testified that the way a surgeon performs a surgery depends on the procedure one is taught.  She did testify, however, that surgery without general anesthesia is less aggressive.

Though Dr. Finder claims that the ALJ ignored certain testimony, additional contradicting testimony required her to make a factual determination regarding which testimony to believe.  This Court may not make a determination as to the credibility of witnesses or weight to be given to conflicting testimony.  Such questions are solely the purview of the ALJ as trier of fact.  *See Sanchez*, 229 S.W.3d at 510; *Granek*, 172 S.W.3d at 778.  Here, the ALJ resolved the existing conflict in favor of the Board.  Given this conflicting testimony and the fact that the ALJ determines the credibility of witnesses and the weight to give their testimony, we hold that finding of fact number eight is reasonably supported by the record.

As both the Board's conclusion that the "procedure" section of Dr. Finder's website was false, misleading, or deceptive and its underlying findings of fact are supported by substantial evidence, we overrule Dr. Finder's first point on appeal.

13

*Expert Testimony*

In her second issue on appeal, Dr. Finder argues that the ALJ abused her discretion in admitting and relying on the testimony of the Board's experts. She first contends that the ALJ should have excluded Porter's testimony because she was not qualified to testify about whether the medical statements on Dr. Finder's website were misleading because she has no medical experience. However, even assuming without deciding that Porter's testimony was improper, the Board's conclusions would still be sufficiently supported by the remaining evidence. Dr. Finder alleges that Porter was "the only expert who purported to offer an opinion about what consumers would think about the website." While this is true, testimony regarding consumer thoughts or behavior was not necessary to support the conclusion that the "gentle" versus "rough and hurried" language was false, misleading, or deceptive. The Board needed only to show that the statement was a material misrepresentation of a material fact that could not be substantiated. *See* 22 Tex. Admin. Code § 164.3(1). As discussed above, substantial evidence from the testimony of the various medical experts supports this conclusion without consideration of Porter's testimony.

Dr. Finder also claims that a conflict of interest made it improper for the ALJ to allow Dr. Diana's and Dr. Limmer's testimony because they were competitors of Dr. Finder in San Antonio. Dr. Finder cites Board rule 182.8, which states that a potential conflict of interest exists, and thus the expert is disallowed from testifying, if the expert is in the same geographical medical market as the subject of the complaint and is in direct competition with the physician or knows the physician. *See* 22 Tex. Admin. Code § 182.8(a)(2)(A) (2010) (Tex. Med. Bd., Expert Physician Reviewers). Dr. Finder concedes that this statute applies only to experts for standard-of-

14

care disciplinary actions rather than advertising ones, but argues that "a conflict is a conflict," and that no rational basis exists for a different standard in Dr. Finder's case.

The Board is authorized to adopt rules to govern its own proceedings and could one day extend this conflict-of-interest rule to advertising cases, but it has not yet done so. *See* Tex. Occ. Code § 153.001(1) (West 2004). Currently, no statute or rule exists preventing testimony by competing physicians in non-standard-of-care disciplinary actions. Instead, the potential biases of the Board's witnesses fall within the ALJ's judgments regarding the credibility of the experts and the weight to be afforded their testimony. Our standard of review precludes us from second-guessing such determinations. *See Granek*, 172 S.W.3d at 778.

For these reasons, we overrule Dr. Finder's second point on appeal.

### Use of an "Unpublished" Standard

In her third issue on appeal, Dr. Finder argues that the Board applied a "surprise" unpublished standard in evaluating Dr. Finder's advertising, which violated her right to procedural due process. She claims that rather than the published "false, misleading, or deceptive" standard, Dr. Limmer used an "unfair comparison" standard, while Dr. Diana used a standard that deemed all comparisons misleading unless they are always true. She claims that the Board's acceptance of testimony by these experts equates to the Board holding Dr. Finder to these standards rather than the "false, misleading, or deceptive" standard purported in the Board's order.

While Dr. Finder frames this issue as a procedural due process question in her brief, it is better characterized as a challenge to the substantial evidentiary support for the Board's order. See, e.g., *West End Pink, Ltd. v. City of Irving*, No. 05-00-00690-CV, 2001 Tex. App. LEXIS 7261,

15

at *8 (Tex. App.—Dallas Oct. 30, 2001, no pet.) (not designated for publication) (interpreting due process argument as complaint that agency's order was not supported by substantial evidence); *City of Dallas v. Furrh*, 541 S.W.2d 271, 273 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) (claim that city council violated claimant's constitutional right because its decision to deny license was arbitrary and discriminatory reviewed under substantial-evidence rule).

Dr. Finder claims that, because the Board's experts applied a lesser standard to reach their conclusions regarding whether the statements were false, misleading, or deceptive, their conclusions do not support the same conclusions by the Board. Assuming without deciding that Dr. Limmer and Dr. Diana did define the term "misleading statement" differently than the published standard, it does not follow that the Board necessarily applied those same standards. Nothing in the Board's order indicates that it applied a standard other than the "false, misleading, or deceptive" standard as defined by the Board's rules. Furthermore, the fact that Dr. Limmer and Dr. Diana may have used differing definitions of "false, misleading, or deceptive" in their ultimate conclusions does not affect the ability of the Board to rely on the remainder of their testimony. The Board may still rely on Dr. Diana's and Dr. Limmer's statements concluding that the language on Dr. Finder's website compared types of anesthesia and physician specialty and their testimony regarding the relationship between anesthesia used, physician's certification, and roughness of the procedure. This evidence supports the Board's conclusion that the "procedure" statements were false, misleading, or deceptive without reliance upon Dr. Diana's and Dr. Limmer's ultimate conclusions that the statements were misleading.

16

Because the Board's order does not contain any language suggesting that it applied an incorrect standard, we overrule Dr. Finder's third point on appeal.

### *Commercial Speech Claim*

Finally, Dr. Finder contends that the Board committed reversible error by applying the wrong legal standard to analyze her commercial speech claim. Though we had some difficulty discerning the exact basis of Dr. Finder's commercial speech claim on appeal, we perceive her argument to be that the Board's restrictions on her commercial speech are an unconstitutional effort to protect plastic surgeons. She argues, as she did in her third point on appeal, that the Board did not apply a "false, misleading, or deceptive" standard, but instead applied an "unfair comparison" and/or "potentially misleading" standard. This improper standard, she claims, acts as a pretext allowing the Board to "protect other medical doctors," which is not a legitimate reason to limit her commercial speech. She further claims that the Board applied an improper "readily subject to verification" standard on all of the statements on Dr. Finder's website, specifically arguing that the Board found several statements to be in violation of its rules "based solely on the fact that certain statements cannot be factually verified."

The Board responded to Dr. Finder's commercial speech claim by stating that it may prevent the dissemination of commercial speech that is false, deceptive, or misleading, and that it has done so here.

We have already determined that substantial evidence exists to support the Board's order finding at least one of Dr. Finder's statements false, misleading, or deceptive. We have also

17

rejected Dr. Finder's argument that the Board applied a standard other than the published "false, misleading, or deceptive" standard.

The United States Supreme Court has held that states may restrict false, deceptive, or misleading commercial speech. *See Ibanez v. Florida Dep't of Prof'l Regulation*, 512 U.S. 136, 142 (1985); *Friedman v. Rogers*, 440 U.S. 1, 9 (1979). It further recognized that a statement may be prohibited if it is misleading or deceptive, even if not provably false. *Friedman*, 440 U.S. at 9-10 ("Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no obstacle to a State's dealing effectively with this problem."); *see also In re R.M.J.*, 455 U.S. 191, 203 (1982) ("Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. . . . Misleading advertising may be prohibited entirely."). Because the Board is permitted to restrict false, misleading, or deceptive commercial speech, and substantial evidence supports its finding that Dr. Finder's website contained at least one false, misleading, or deceptive statement, we reject Dr. Finder's commercial speech claim.

Additionally, Dr. Finder argues that the Board erred in failing to address her commercial speech defense in its findings of fact or conclusions of law. Though Dr. Finder argues that the Board must, under the Administrative Procedure Act, enter findings of fact and conclusions of law on an affected party's affirmative defenses, she cites to no statutes or case law that would support this assertion.

An agency is not required to state the facts on which it did not rely for support of its ultimate findings, nor is it required to make factual findings concerning reasons why it rejected an argument or recommendation. *See Cities of Abilene v. Public Util. Comm'n of Tex.*, 854 S.W.2d

18

932, 946 (Tex. App.—Austin 1993) (finding nothing in predecessor to Administrative Procedure Act that required agency to explain rejection of expert testimony), *aff'd in part and rev'd in part on other grounds*, 909 S.W.2d 493 (Tex. 1995); *Clear Creek Sch. Dist. v. Comm'r of Educ.*, 775 S.W.2d 490, 493 (Tex. App.—Austin 1989, no writ) ("An agency is not, however, required to state facts that it rejected or did not rely upon to support its order."). It is only required that substantial evidence reasonably support the conclusions that an agency does assert. *See* Tex. Gov't Code Ann. § 2001.141. As discussed in response to Dr. Finder's first point of error, the Board's findings of fact and conclusions of law are reasonably supported by substantial evidence. Therefore, Dr. Finder's fourth point is overruled.

Because there is substantial evidence to support both the Board's underlying findings of fact and its ultimate conclusion that the statements in the "procedure" section of the website's "Technique Comparison" chart are false, misleading, or deceptive, the district court did not err in affirming the Board's final order.

## CONCLUSION

We affirm the district court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: November 18, 2010

19