**Affirmed; Opinion Filed November 19, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01244-CV

**SYLVIA MEDRANO, Appellant**

**V.**

**DALLAS COUNTY AND DALLAS COUNTY CIVIL SERVICE COMMISSION, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-11193**

## MEMORANDUM OPINION

Before Justices Myers, Nowell, and Evans
Opinion by Justice Myers

Sylvia Medrano appeals the district court's judgment affirming the decision of Dallas County and the Dallas County Civil Service Commission to terminate her employment with Dallas County. Appellant brings one issue on appeal contending the district court erred in finding substantial evidence supported the County's decision to terminate her employment. We affirm the district court's judgment.

## BACKGROUND

Appellant was the supervising clerk in the magistrate court. In 2016, appellant's supervisor received multiple complaints that appellant was not

available in her office during her working hours. Appellant's supervisor informed the Dallas County District Clerk, Felicia Pitre, of the complaints.

A security camera inside the entrance to the magistrate court office recorded video of everyone entering and leaving the area. Pitre requested a copy of the security camera video for the preceding thirty days (the security camera's recordings were deleted after thirty days). The video from the security camera included time and date stamps. Pitre viewed the video to see what time appellant arrived and left each day as shown by the security camera. She compared those times to the times appellant entered in the County's official employee time-keeping system called Kronos. For the thirty-day period, Pitre discovered discrepancies on nine days[1] out of the thirty-day period. Some of the discrepancies were five or six minutes, but four entries were discrepancies of more than twenty minutes. Pitre directed appellant's supervisor to issue a Statement of Concerns to appellant giving appellant notice of the discrepancies and an opportunity to respond. The Statement of Concerns asked appellant "for your response to the discrepancies as listed on the attachment." The notice gave appellant two days to respond in writing and stated she could request additional time.

---

[1] Originally, the alleged number of days with discrepancies was eleven, but that was later reduced to nine. On one of the days, there was no video from the security camera to support the allegation, and on another day, the video camera showed appellant arrived nine minutes before the time she entered in Kronos, and not eight minutes after as alleged.

In her written response, which she signed the day after receiving the Statement of Concerns, appellant generally denied making any misrepresentations about her work times. She also stated:

> As a supervisor with the District Clerk's Office my duties do not begin nor end at my desk. I am required to provide the citizens of Dallas County with the highest level of professionalism and professional service. Sometimes this service comes in the form of answering questions of needy citizens stopping me, on the street, on my way to the office. There are other times my duties as Magistrate Court Supervisor require me to interact with judges, attorneys, law enforcement and other government agencies at or around the end of my work schedule.

> Having faithfully served the County for over eight years and bringing to it a sense of pride, duty, and leadership, I can only question the motivation of anyone doubting my integrity.

Appellant provided no explanation for the specific time discrepancies. She did not request additional time, nor did she request any additional information. After reviewing her response, Pitre authorized appellant's termination. The notice of termination, called a Statement of Corrective Action, stated the termination was based on appellant's "intentional falsification of your Kronos record and the poor example you have provided . . . ."

Appellant filed a grievance of her termination, which was reviewed by her supervisor. Appellant asserted that her termination was the result of improper application of rules, regulations, and procedures, the result of unfair treatment, the result of unlawful discrimination, and that it was without proper cause. She also asserted that the Statement of Corrective Action incorrectly stated that she entered

her time using an off-premises computer. Appellant did not have access to Kronos from off-premises computers. Appellant also complained that the Statement of Corrective Action stated appellant entered time in Kronos for days that she did not come to work. The time discrepancies were for days appellant worked. There was no allegation that appellant entered time for days that she did not work. Appellant stated, "The willful misrepresentation of facts contained within the SCA [Statement of Corrective Action] support[s] my belief that management/administration are continuing their ongoing efforts to defame, retaliate, discriminate, and unlawfully harass me." Appellant's supervisor responded, stating appellant correctly pointed out mistakes in the Statement of Corrective Action that were resolved in an amended Statement of Corrective Action.[2] The supervisor also stated that those mistakes were not related to the reason appellant was terminated, which was falsification of her time entries in Kronos. The supervisor upheld the decision to terminate appellant's employment.

Appellant appealed her termination to the chief deputy clerk and then to Pitre, complaining that they did not consider her response that her job duties sometimes included activities before her arrival and after her departure from the office. The chief deputy clerk and Pitre upheld appellant's termination.

---

[2] The amended Statement of Corrective Action removed the statements about appellant entering her time from off-premises computers and for entering time for days she did not work at all. It also corrected a misstatement in the original Statement of Corrective Action that said appellant had three days to respond to the Statement of Concerns when she had two days.

Appellant then appealed to the Dallas County Civil Service Commission. In the evidentiary hearing before the Commission, appellant for the first time provided detailed explanations for most of the discrepancies. After hearing the evidence, the Commission voted to uphold appellant's termination.

Appellant then filed suit in state district court appealing the decision to remove her from her position. *See* TEX. LOC. GOV'T CODE ANN. § 158.012(a) ("A county employee who, on a final decision by the commission, is demoted, suspended, or removed from the employee's position may appeal the decision by filing a petition in a district court in the county within 30 days after the date of the decision."). The parties agreed that the district court could determine the case based on the record before the Commission and on the parties' briefs. *See id.* § 158.0122(d) ("The court shall conduct the review sitting without a jury and is confined to the commission record . . . ."). The district court affirmed the Commission's decision to terminate appellant.

## SUBSTANTIAL EVIDENCE REVIEW

Section 158.012 of the Local Government Code permits a county employee to appeal to the district court from a final decision of the county civil service commission to remove the employee from the employee's position. *See* LOC. GOV'T § 158.012(a). The appeal to the district court is under the substantial evidence rule. *Id.* § 158.012(b). Under that review, the district court "may not substitute its judgment for the judgment of the commission on the weight of the

–5–

evidence on questions committed to the commission's discretion." *Id.* § 158.0121. However, the court shall reverse or remand the case if the employee's "substantial rights . . . have been prejudiced because the commission's findings, inferences, conclusions, or decisions are: . . . not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id.* § 158.0121(2)(E). Courts reverse a civil service commission's decision only if the decision was made without regard to the law or the facts leading to an unreasonable, arbitrary, or capricious ruling. *Gardner v. Tarrant County Civil Serv. Comm'n*, No. 2-4-130-CV, 2005 WL 32415, at *2 (Tex. App.—Fort Worth Jan. 6, 2005, no pet.) (mem. op.) (citing *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986)).

"Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *N.E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020). "Thus, the evidence 'may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'" *Id.* (quoting *Tex. Health Facilities Comm'n v. Charter Med-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)); *see also R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792–93 (Tex. 1995) ("Substantial evidence requires only more than a mere scintilla, and 'the evidence on the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'" (quoting

*Charter Med.-Dallas*, 665 S.W.2d at 452)). The finder of fact, the Commissioners in this case, are the sole judges of witness credibility and are free to accept or reject any or all of the testimony of any witness. *See Granek v. Tex. State Bd. of Med. Examiners*, 172 S.W.3d 761, 779 (Tex. App.—Austin 2005, no pet.) ("We are not permitted to substitute our judgment for the ALJ's regarding the credibility of witnesses."). The courts presume substantial evidence supports the Commission's determination, and the burden is on the contestant to prove otherwise. *Gardner*, 2005 WL 32415, at *2 (citing *City of El Paso v. Pub. Util Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994)).

We review de novo a district court's decision under sections 158.012 and 158.0121. *See Bexar Cty. Civil Serv. Comm'n v. Guerrero*, No. 04-15-00341-CV, 2016 WL 4376629, at *3 (Tex. App.—San Antonio Aug. 17, 2016, no pet.) (mem. op.); *see also Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984) (the agency is the primary fact-finding body, and "the question to be determined by the trial court is strictly one of law").

## THE EVIDENCE

Although appellant was an exempt employee, she was required to report her hours of work. The County alleged appellant reported times for beginning and ending work that differed from the actual times she began and ended work. The County's timekeeping records are government documents, and falsification of those documents may result in termination. The County's evidence for the

–7–

time-reporting discrepancies was screenshots from the security video camera at the door of the magistrate court's office.

Appellant argued that the time she entered and left the magistrate court was not evidence of when she began and ended her workday for the County. She testified that she often picked up the magistrate court's mail or supplies on her way into the office. The magistrate court's mail was delivered to the criminal courthouse, which was in a separate building from the magistrate court, and that it would take her six to ten minutes to walk to the mailroom and then to the magistrate court. She testified that she would deliver arraignment packets or other documents as she left the magistrate court at the end of the workday, which would take "six to 10 minutes, 15," depending on whether appellant had to "run an errand." She would clock out when leaving the office to drop off the arraignment packets or run other errands and include the time she knew it would take to complete the task.

We will consider the evidence for each of the time discrepancies for which the County presented evidence at the Commission hearing.

### August 22, 2016

The security video showed appellant arrived at the office at 8:39 a.m. Appellant recorded her workday beginning at 8:30 a.m. Appellant testified she arrived at the criminal courthouse at 8:15 a.m. to get the mail for the magistrate court.

The security video showed appellant left the office for the day at 4:39 p.m. Appellant recorded her workday ending at 4:45 p.m. Appellant testified she left the office at 4:39 p.m. to deliver arraignment packets.

**August 23, 2016**

The security video showed appellant arrived at the office at 8:49 a.m. Appellant recorded her workday as beginning at 8:30 a.m. Appellant testified she arrived at the courthouse at 8:15 a.m. and went to speak to one of the district clerk supervisors.

**September 1, 2016**

The security video showed appellant arrived at 8:35 a.m. Appellant recorded her workday as beginning at 8:30 a.m. Appellant testified she picked up supplies on her way to the office and that the screenshot from the video showed her carrying a box of envelopes as she entered the office.

The security video showed appellant leaving the office at 3:15 p.m. Appellant recorded her workday as ending at 3:30 p.m. Appellant testified she left at 3:15 p.m. to deliver arraignment packets.

**September 2, 2016**

The security video showed appellant arrived at the office at 8:49 a.m. She recorded her workday as beginning at 8:00 a.m. Appellant testified she "arrived around 8:15" a.m. and picked up the mail. She testified she may have then attended a "Smart Justice" meeting. Appellant did not explain the discrepancy

–9–

between her recording her workday as beginning at 8:00 a.m. and her arrival at the courthouse at 8:15 a.m.

The security video showed appellant left the office at 4:15 p.m. She recorded her workday as ending at 4:30 p.m. Appellant provided no specific explanation for why she left the office early on this day.

### September 6, 2016

The security video showed appellant arrived at the office at 8:51 a.m. She recorded her workday as beginning at 8:30 a.m. Appellant testified that when she arrived at the courthouse, a member of the public asked her for directions to the fingerprinting office, and she walked the person there before going to the magistrate court's office.

The security video showed appellant left the office at 4:25 p.m. She recorded her workday as ending at 4:30 p.m. She testified she had to drop off something and she knew that would take a few minutes, so she entered her ending time as 4:30 p.m.

### September 12, 2016

The security video showed appellant left the office at 12:10 p.m. She recorded her workday as ending at 1:00 p.m. She testified she left at 12:10 because she was going to the civil courthouse to pick up new ID badges for the clerks. However, when she got to the civil courthouse, the person she was to see about the badges was not there. Because she did not receive the badges, there was no

corroborating evidence she was at the civil courthouse to pick up the ID badges. Appellant testified she also was at the civil courthouse for a non-job-related family court matter. Appellant did not explain why she expected it would take fifty minutes for her to travel from the magistrate court's office to the civil courthouse for the ID badges.

### September 14, 2016

The security video showed appellant arrived at the office at 8:36 a.m. She recorded her workday as beginning at 8:30 a.m. Appellant testified that when she entered the office, "I was carrying a bag there for employee morale. I stopped to get some juice and donuts for the—for the ladies. That was about 8:36, yeah."

### September 15, 2016

The security video showed appellant arrived at the office at 8:36 a.m. She recorded her workday as beginning at 8:30 a.m. Appellant testified she used the restroom in the criminal courthouse on her way to the office because the restroom for the magistrate court was under construction.

### September 19, 2016

The security video showed appellant arrived at the office at 8:35 a.m. She recorded her workday as beginning at 8:30 a.m. Appellant provided no specific explanation for this discrepancy.

The security video showed appellant leaving the office at 3:24 p.m. She recorded her workday as ending at 4:30 p.m. She testified she left at 3:24 p.m.

–11–

because the Chief Deputy Clerk, Nina Montique, asked her to go to Parkland Hospital's lactation center to pick up brochures and pamphlets for the lactation station the County was planning. Montique testified she did not give appellant permission to leave work early to go to Parkland. Montique also testified that the County employees involved in the lactation station "did it after work" "because we donated toward that room."

## Other Evidence

Appellant called three witnesses who worked in the district clerk's office who testified that during August and September 2016, they saw appellant at about 8:00 or 8:30 in the morning come into the area where the mailboxes and supplies were located. They were not able to say with certainty that they saw appellant getting the mail or supplies on a specific day.

The Commissioners expressed concern that appellant did not provide her specific explanations for the discrepancies in her response to the Statement of Concerns or in the earlier stages of the grievance before it reached the Commissioners. Appellant testified that until she saw the pictures from the security videos showing her arriving and leaving the office, she was not sure what her reasons were for those days. However, she testified, seeing the pictures "helped me just jog my memory a little bit." Appellant did not see the pictures until after the earlier stages of the grievance proceedings were concluded.

–12–

## ANALYSIS

Appellant argues that the County's evidence of the screenshots from the security video of her arrival and departure times constitutes no evidence of her actual hours worked because her work could include time away from the office, and the County presented no evidence that appellant was not performing her job duties before she entered and after she left the magistrate court's office. The evidence of appellant's job duties included Pitre's testimony that appellant's job was to supervise the magistrate court. One of the Commissioners asked Pitre whether appellant's job duties might involve activity outside the office, and Pitre answered, "Other than meeting with her manager . . . ." The evidence of appellant's job duties also included the following description:

> Summary of Functions: Assists in managing the processing activities of one or more areas of responsibility by planning, assigning and supervising the work of others, establishing goals, developing schedules, priorities and standards for achieving goals, and coordinating and evaluating processing activities.
>
> Management Scope: Supervises exempt and non-exempt staff.
>
> Duties and Responsibilities:
>
> 1. Assists management by supervising, delegating and providing guidance to staff in one or more areas of responsibility to ensure compliance with applicable laws, policies and procedures. ·
>
> 2. Acts as technical expert/liaison and communicates with staff, elected officials, Judges, attorneys, other departments and the general public to solve complex problems or issues.
>
> 3. Monitors work processes, provides feedback, collects data for performance measures, establishes goal and objectives, and recommends/implements process improvements.

–13–

4. Hires and trains staff, coordinates work assignments to ensure adequate staffing, evaluates performance, initiates disciplinary actions, coordinates leave and maintains time and attendance reports.

5. Maintains knowledge of applicable laws, recommends changes as required, develops and incorporates changes in policies and procedures.

6. May represent the department in oral presentations, hearings, trials and legislative meetings, interacting with the judiciary, law enforcement and other agencies to communicate ideas and solve problems. May coordinate community service programs and activities.

7. Assists with budget preparation and maintains related data and reports.

8. Performs other duties as assigned.

Duties and responsibilities 1. through 4. were designated "Essential," and the remaining duties and responsibilities were "Non-essential." Pitre testified that appellant would not need to leave the magistrate court's area to talk to the magistrate judge or to talk to an attorney. The Commissioners could determine from this job description and Pitre's testimony that, except for 6. and appellant "meeting with her manager," none of appellant's jobs and responsibilities necessarily required action by her outside the office. We conclude the County's evidence of when appellant arrived at and left the office was some evidence of when her workday began and ended.

Appellant presented evidence that her workday included actions not listed under her job duties, including getting the mail and supplies for the magistrate court, delivering arraignment packets, getting juice and donuts for the clerks, etc.

It was within the discretion of the Commission to determine appellant's credibility and the weight to give her testimony, including whether she performed those actions and whether they were part of her job duties that should be included in her workday. This Court "may not substitute its judgment for the judgment of the commission on the weight of the evidence on questions committed to the commission's discretion." LOC. GOV'T § 158.0121. The County's evidence constitutes substantial evidence to support terminating appellant's employment.

Even if the Commissioners believed appellant's testimony that she did not arrive late or leave early because she was picking up mail and supplies on her way to the office and dropping off arraignment packets or running other errands that were part of the business of the magistrate court, the Commissioners could have concluded appellant did not properly enter her time for the two largest discrepancies, September 12 and September 19.[3] These two discrepancies did not involve a controversy over whether appellant's workday began and ended when the security camera showed she entered and left the magistrate court. Instead, they concern whether appellant improperly claimed time as part of her workday for activities outside the magistrate court's office and the criminal courts building.

---

[3] We make no determination in this case that appellant's picking up the mail and supplies, dropping off arraignment packets, attending Smart Justice meetings, getting juice and donuts for the clerks, helping members of the public find their way in the courthouse, picking up ID badges, or traveling to Parkland Hospital for materials for the County's lactation station were part of appellant's job duties and appropriately included as her work time.

For the September 12 entry, the Commissioners could have concluded that appellant's estimate of fifty minutes as the time it would take her to pick up the ID badges at the civil courthouse was exaggerated, especially since she did not intend to return to work after picking them up.[4]

For the September 19 entry, even if the Commissioners believed appellant did go to Parkland Hospital to pick up the materials for the County's lactation station, the Commissioners could have concluded that appellant's trip was not within her job duties and should not have been included in her workday. The Commissioners could also have determined that appellant should not have included this time in her work day based on Montique's testimony that the clerks were donating toward the lactation station and performed activities for the lactation station after work.

Appellant asserts she was unable to obtain corroborating evidence of her actual arrival and departure times from the criminal courthouse. Appellant did not receive notice of the allegations until more than thirty days after the dates in the allegations. Because the County deletes security camera recordings after thirty days, she could not obtain evidence from other security cameras showing when she arrived at and departed from the criminal courthouse on the days in question.

_____

[4] Appellant testified she was authorized to pick up security badges for the clerks and that she had done so on other occasions. Pitre testified her executive assistant usually picked up the badges. Pitre said she could not testify that appellant did not pick up the badges, "but that is generally not our procedure."

However, even if the Commissioners believed appellant's testimony about when she arrived at and left the criminal courthouse, the Commissioners could have concluded she entered incorrect departure times for September 12 and 19.

Appellant also asserts that because the Commissioners made no express finding regarding appellant's credibility, "the District Court could not make any judgment of credibility but simply look at the evidence . . . to determine whether there is substantial evidence to support the County's termination of Appellant." We disagree. The district court, like this Court, "may not substitute its judgment for the judgment of the commission on the weight of the evidence on questions committed to the commission's discretion." *See* LOC. GOV'T § 158.0121. The Commissioners were the trier of fact, so the credibility of the witnesses and the weight to be given each witness's testimony were questions committed to their discretion. *See Granek*, 172 S.W.3d at 779. Appellant cites no authority requiring the Commissioners to make express findings on witness credibility.

We conclude that more than a scintilla of evidence supports the Commission's determination to uphold the County's decision to terminate appellant. The record demonstrates a reasonable basis for the County's decision. Therefore, substantial evidence supported the Commission's ruling. The district court did not err by affirming the Commission's decision. We overrule appellant's issue on appeal.

## CONCLUSION

We affirm the district court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

191244F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SYLVIA MEDRANO, Appellant

No. 05-19-01244-CV     V.

DALLAS COUNTY AND DALLAS
COUNTY CIVIL SERVICE
COMMISSION, Appellees

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-11193.
Opinion delivered by Justice Myers.
Justices Nowell and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees DALLAS COUNTY AND DALLAS COUNTY CIVIL SERVICE COMMISSION recover their costs of this appeal from appellant SYLVIA MEDRANO.

Judgment entered this 19th day of November, 2020.